United States Courts
Southern District of Texas
F I L E D

AUG 1 1 2023

Nathan Ochsner, Clerk of Court

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SURGALIGN HOLDINGS, INC., et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| RYAN MESSNER, | ) | |
| | ) | Case No. 23-90731 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SURGALIGN HOLDINGS, INC., | ) | |
| | ) | |
| Defendant(s). | ) | |

## COMPLAINT

Plaintiff(s), RYAN MESSNER, pro se, files this Complaint pursuant to damages resulting from failure to disclose information, and for misrepresenting pertinent information investors use to make decisions, in conjunction with §523(a)(2), false pretenses, false representation, actual fraud, and alleges the following in support of the requested relief:

## JURISDICTION

1. This is an adversary proceeding in which the Plaintiff(s) is seeking Recovery of Money pursuant to FRBP 7001(1), and deny the discharge in bankruptcy of any debtor who has committed any acts of fraud, misrepresentation, deceit, or false pretenses under §523(a)(2).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

4. Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 157(2)(O).

5. Venue is proper pursuant to 28 U.S.C. § 1409(a) and Local Rules of the United States Bankruptcy Court for the Southern District of Texas.

## BACKGROUND FACTS

6. Fraud by PREVIOUS management has already been established and settled with the SEC "In the Matter of Surgalign Holdings, Inc., et al. Admin. Proc. File No. 3-20945," in which said management shipped orders weeks or months before its customers had originally requested delivery, thereby pulling sales forward from future quarters, to address projected quarterly revenue shortfalls.

The fact remains that CURRENT management of SURGALIGN HOLDINGS, INC. did not disclose this pertinent financial information in a written press release, until AFTER the aforementioned SEC settlement was reached, and a press release was then issued in that regard on August 3, 2022.  Why would the CURRENT management choose not to issue a press release in 2020 upon commencement of the merger with PREVIOUS management and their falsified pull-forward scheme, but did choose to issue a press release once they had settled with the SEC?

CURRENT management failed to disclose information, and misrepresented pertinent details investors use to make decisions, as with the complaint issued herein.  Plaintiff would not have invested in SURGALIGN HOLDINGS, INC. if all pertinent financial information would have been disclosed by CURRENT management at the time of merger with PREVIOUS management.

Based on these facts, Plaintiff alleges Securities Fraud pursuant to 15 U.S.C. § 78(b) and False and Misleading Statements pursuant to 15 U.S.C. § 78ff.

WHEREFORE, the Plaintiff, RYAN MESSNER, respectfully request(s) that the Court approve the Recovery of Money pursuant to FRBP 7001(1), and deny the discharge in bankruptcy of any debtor who has committed any acts of fraud, misrepresentation, deceit, or false pretenses under §523(a)(2), for such other and further relief the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Ryan Messner, Plaintiff, pro se
ryanmessner@hotmail.com
570 Camphor Way
Lexington, KY 40509
859.559.7985





Letter to Counsel w/ Exhibits

7/18/2023



Mr. Pesce:

It is my belief that Surgalign Holdings, Inc. (Case No. 23-90731) misrepresented pertinent information investors use to make decisions when they chose to ONLY issue a press release on August 3, 2022, attached herein as "EXHIBIT A," stating the following:  "concluding and resolving in its entirety the previously disclosed SEC investigation relating to activities that occurred between 2015 and 2019 by RTI Surgical Holdings, Inc., and RTI Surgical, Inc. and the prior management."

After downloading, saving, and reviewing ALL press releases on Surgalign's website as of July 18, 2023, the company chose to ONLY issue a press release AFTER the investigation from 2015-2019 was completed (PR date August 3, 2022), and chose to settle with the Securities and Exchange Commission in August of 2022.  There is NO PRESS RELEASE issued in 2020, or thereafter, that CLEARLY would notify potential investors of the "pull-forward" schemes, which were settled with the Securities and Exchange Commission.  Or, was there a press release that I overlooked tied possibly to one of the other 7 COMPANIES that they chose to VOLUNTARILY file Chapter 11 on the same date of June 19, 2023, outlined below:

Andi's Belmarall, LCC (Case No. 23-90733)
Fourth Dimension Spine, LLC (Case No. 23-90735)
Holo Surgical Inc. (Case No. 23-90736)
HoloSurgical Technology Inc. (Case No. 23-90732)
Pioneer Surgical Technology NewCo Inc. (Case No. 23-90734)
Spinal Transition and Professional Services LLC (Case No. 23-90730)
Surgalign Spine Technologies, Inc. (Case No. 23-90737)

According to the 'About Us' page on Surgalign's website as of July 18, 2023, and attached herein as "EXHIBIT B," the company "began operating as Surgalign" in July 2020.  Furthermore, when you click on the July 2020 slide on the same 'About Us' page, it states "Surgalign Spine Technologies is created."  So, was "Surgalign" created in July 2020, or was "Surgalign Spine Technologies" created in July 2020?

In the past 5 years, I have personally known, and even worked with, two men that were unknowingly to me, involved with similar tactics including, but not limited to, the following:

Securities fraud
Ponzi scheme
Investing advisor fraud
Mail fraud

$23 million in fines combined
21 years in federal prison combined

I bring up my previous affiliations, not to insinuate anything, but to reflect and compare the similarities between my former colleagues that I thought I personally knew, to a management team that appeared to have all of the perfect credentials, background, and contacts that would lead to a potential merger or acquisition for Surgalign Holdings.  Their backgrounds almost seemed too good to be true on each of their bio pages, which I have also downloaded as of July 18, 2023.

Ironically, Surgalign or Surgalign Spine Technologies, was formed in July 2020, IMMEDIATELY after COVID-19 shut down the economy, including hospitals, and subsequently, this could have appeared to POTENTIALLY affect the FALSE, INFLATED revenue numbers provided by previous management, that were NEVER disclosed to potential investors until AFTER the 4-year SEC investigation was completed.  Even then, the results of the 4-year investigation were not released until August 3, 2022.  Obviously, Surgalign Holdings' management team KNEW about the SEC investigation when merging with RTI, and CHOSE not to disclose that pertinent investor information in the form of a press release, as to not draw attention to it, which would have turned away potential investors like myself.  Instead, they chose to WITHHOLD that information by not issuing a PR, and made people believe that COVID-19 was the sole factor for the reduced sales, when in fact, the previous sales numbers were NOT true, and were being pulled forward.

I will be moving forward with an adversary proceeding through the United States District and Bankruptcy Courts, Southern District of Texas, including but not limited to all of the details herein, and will remind the Court of my initial PLEADING letter, attached herein as "EXHIBIT C," requesting priority status for my claim already submitted to Kroll, also attached herein as "EXHIBIT D" for reference.

Thank you for your time, and urgent attention to this matter.


Ryan

**Ryan Messner**

Paralegal | Notary Public, State at Large KY | Certified Remote Online Notary (RON)

859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us

*This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.*

EXHIBIT A

August 3, 2022



# Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2015-2019

DEERFIELD, Ill., Aug. 03, 2022 (GLOBE NEWSWIRE) -- Surgalign Holdings, Inc., (NASDAQ: SRGA) reached a settlement with the U.S. Securities and Exchange Commission ("SEC") on August 3, 2022, concluding and resolving in its entirety the previously disclosed SEC investigation relating to activities that occurred between 2015 and 2019 by RTI Surgical Holdings, Inc., and RTI Surgical, Inc. and the prior management. As reflected in the SEC's Order, those activities included pulling sales forward from future quarters to address projected quarterly revenue shortfalls.

Under the terms of the settlement, the Company has agreed to pay a civil penalty of US$2 million which was recorded in full during the fourth quarter of 2021. As part of the settlement, the Company has also agreed to refrain from future violations of specified provisions of federal securities laws and rules. In addition to the settlement, the Company is expected to receive $0.6 million from former executives related to recouped compensation.

The SEC acknowledged that in assessing Surgalign's offer of settlement, it took into consideration its substantial cooperation with the Commission's staff throughout the investigation, including by disclosing information about conduct that the staff had not yet uncovered through its own investigation, conducting an internal investigation regarding this conduct, and providing the staff regular and detailed updates on the internal investigation and key documents identified through that investigation.

"This investigation and the settlement reached stems from the activities of RTI and former senior management, not our current team. Reaching this settlement with the SEC will allow us to move forward without this uncertainty and is one more issue resolved in our effort to transform the company since we divested the RTI OEM business roughly two years ago," said David Lyle, Chief Financial Officer of Surgalign. "We believe we are now at the tail end of our transformation and are excited about the prospects of returning to growth in 2023 through new spine product offerings and the ramp of our HOLO Portal Surgical Guidance System coupled with the expansion of our AI platform."

**About Surgalign Holdings, Inc.**
Surgalign Holdings, Inc. is a global medical technology company committed to the promise of digital health to drive transformation across the surgical landscape. Uniquely aligned and resourced to advance the standard of care, the company is building technologies physicians and other health providers will look to for what is truly possible for their patients. Surgalign is focused on developing solutions that predictably deliver superior clinical and economic

outcomes. Surgalign markets products throughout the United States and in more than 50 countries worldwide through an expanding network of top independent distributors. Surgalign is headquartered in Deerfield, IL, with commercial, innovation and design centers in San Diego, CA, Warsaw and Poznan, Poland, and Wurmlingen, Germany. Learn more at www.surgalign.com and connect on LinkedIn and Twitter.

**Forward Looking Statement**

This press release contains forward-looking statements that are based on management's current expectations, estimates and projections about our products, company, and industry, our management's beliefs, and certain assumptions made by our management. Words such as "anticipates," "expects," "intends," "plans," "believes," "seeks," "estimates," and other variations of such words and similar expressions are intended to identify such forward-looking statements. These statements are not guarantees of future performance and are subject to risks and uncertainties, including the risks described in our public filings with the U.S. Securities and Exchange Commission (SEC). Our actual results may differ materially from the anticipated results reflected in these forward-looking statements. Copies of the company's SEC filings may be obtained by contacting the company or the SEC or by visiting Surgalign's website at www.surgalign.com or the SEC's website at www.sec.gov.

**Investor and Media Contact:**
Glenn Wiener
T: +1 917 887 8434
E: gwiener@gwcco.com

**Surgalign Contact:**
Kristine Simmons
T: +1 619 206 4648
E: ksimmons@surgalign.com



Source: Surgalign Holdings, Inc.

# EXHIBIT B



# Creating the Future of Digital Health

We are Surgalign, a global medical technology company committed to the promise of digital health. We are investing to be a leader in developing and harnessing the incredible possibilities of digital surgery to redefine the very idea of "personalized medicine."

We began operating as Surgalign in July 2020, but with a legacy of clinically validated surgical device and biologic innovation stretching back 30 years. We are dedicated to advancing care and elevating outcomes. Surgalign markets products in the United States and in approximately 50 countries globally.

## Our Journey

From Pioneer Surgical to RTI Surgical to Surgalign to the addition of our powerful HOLO™ AI technology, here are some of the significant milestones in a journey that has brought us to the foothills of possibility.



| AUGUST 2018 | JULY 2020 |
| --- | --- |
| OCT 2020 | JAN 2022 |

**JULY 2020**

Surgalign Spine Technologies is created. A "new" company with a nearly 30 year heritage solely focused on advancing spine surgery and elevating clinical outcomes.



# Discover Our Products









HOLO Portal™

CervAlign® Anterior Cervical
Plate System



**View All Products**



Terms of Use

Web Privacy Policy and Transparency Disclosure Notice

© 2023 Surgalign Spine Technologies, Inc. All rights reserved.

# EXHIBIT C

**PLEADING**

United States Courts
Southern District of Texas
**FILED**

**JUL 0 6 2023**

Nathan Ochsner, Clerk of Court

Nathan Ochsner
Clerk of Court
P. O. Box 61010
Houston, TX 77208

RE: Case 23-90731, Surgalign Holdings, Inc. et al (Common Stock SRGA)

July 5, 2023

Honorable Nathan Ochsner:

I am writing to PLEAD and request that my comments and concerns herein be added to the docket in the aforementioned case, and that my claim against said debtor be added to the docket as a PRIORITY claim, ahead of other non-priority claims during this proceeding. I also ask the court for consideration to common shareholders, by NOT deeming common shares WORTHLESS during this proceeding. Shareholders have invested their hard-earned money and life savings, and I am asking for that consideration during this difficult economic time.

I am a long-term investor who has lost my life savings of $135,000 USD (both realized and unrealized as the date of this letter) as a direct result of the class action lawsuit, attached herein and marked as "Exhibit A," entitled: In the Matter of Surgalign Holdings, Inc., et al. Admin. Proc. File No. 3-20945. As a result, the SEC has established a $2,075,000.00 "Fair Fund" that is deposited with the SEC Bureau of Fiscal Service, which has now been extended until October 7, 2023 in regards to a Trustee being appointed.

Prior to purchasing common stock in Surgalign Holdings, my due diligence and research in 2019 was based solely on these falsified "pull-forward" numbers detailed in the aforementioned lawsuit, thinking that the company's sales had 'dropped off' due to COVID-19's affect on hospital closures, and that once COVID-19 subsided, the sales figures would at least double, back to pre-COVID levels. Based on recent earnings call transcripts, I anticipate that current management will deflect responsibility to prior management's actions, in an effort to not be held liable in this matter. However, current management never disclosed anything in a public press release regarding the "pull-forward" numbers, until required to do so on August 3, 2022, when the SEC instituted and simultaneously settled administrative and cease-and-desist proceedings (the "Order") against Surgalign Holdings, Inc. and Robert P. Jordheim (collectively, the

"Respondents") attached herein and marked as "Exhibit B." As of this press release issued on August 3, 2022, I had already purchased my shares of the common stock based on the research aforementioned, and was already down a significant amount of money. Prior to the debtor's Chapter 11 filing in June of 2023, I decided to purchase additional shares of the common stock, to average down my overall costs after the detrimental 30-1 reverse split instituted by current management to regain Nasdaq compliance, as well as highly questionable public offerings by current management, with absolutely no explanation. I had sold off 20,000 shares of common stock prior to said reverse split, hoping to remove some of my higher priced shares that were originally purchased, and to potentially enable me to be in a better position after the reverse split was executed. Unfortunately, the company and it's management team failed to execute, resulting in it's recent Chapter 11 filing.

It is my opinion that the company and it's officers did not have the best interests of the shareholders in mind, and did not perform their fiduciary duties required of them, either when taking over the previous company, or during their tenure at Surgalign Holdings. If they would have done their due diligence initially, myself and other shareholders would not be in the position we are in today, and would not have invested our savings knowing what we now know.

I am seeking reimbursement for 100% of my original losses on the common stock of Surgalign Holdings ($135,000), plus $25,000 emotional damages caused, in addition to 4% interest on the $135,000 that I would have earned in my high yield savings account for the past 2 years. Monetary proof of loss available upon request.

I am PLEADING that the court prioritize my claim as a PRIORITY claim.

Thank you for your time and consideration.

Ryan Messner
Paralegal | Notary Public, State at Large KY | Certified Remote Online Notary (RON)
859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
June 20, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | ) | Case No. 23-90731 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

### ORDER GRANTING COMPLEX CHAPTER 11 BANKRUPTCY CASES

On June 19, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed these jointly administered chapter 11 cases and the *Notice of Designation of Complex Chapter 11 Cases* (the "Notice").[2] Based on its review of the initial pleadings, the Court concludes that the complex chapter 11 case designation is appropriate. Accordingly, the Court hereby orders:

1.      The Procedures for Complex Chapter 11 Cases in the Southern District of Texas apply to these chapter 11 cases. The procedures are posted on the Court's website. Compliance with the procedures is required.

2.      The Debtors must give notice of this Order to all parties in interest within seven (7) days.   If a party in interest objects to the provisions of this Order, that party may file an appropriate motion within fourteen (14) days after service of the Order.

3.      The Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**") apply to these chapter 11 cases, subject to the following modifications:

    a)   Bankruptcy Local Rule 1001-1(b) does not apply.

    b)   Rule 83.1 of the Local Rules of the U.S. District Court of the Southern District of Texas (the "**Local Rules of the District Court**") applies.

    c)   Appendix A to the Local Rules of the District Court applies.

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are: Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952). The location of the debtors' service address in these chapter 11 cases is: 520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Notice.

d) If a conflict exists between the Bankruptcy Local Rules and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas*, the *Procedures for Complex Chapter 11 Cases in the Southern District* of Texas govern.

Signed:  June 20, 2023

Christopher Lopez
United States Bankruptcy Judge

Case 23-90730   Document 177   Filed in TXSB on 07/06/23   Page 16 of 104

7/5/23, 1:47 PM

SEC.gov | In the Matter of Surgalign Holdings, Inc., et al. Admin. Proc. File No. 3-20945

# EXHIBIT A

# In the Matter of Surgalign Holdings, Inc., et al. Admin. Proc. File No. 3-20945

On August 3, 2022, the Commission instituted and simultaneously settled administrative and cease-and-desist proceedings (the "Order") against Surgalign Holdings, Inc. and Robert P. Jordheim (collectively, the "Respondents"). In the Order, the Commission found that From 2015 through 2019, RTI (now known as Surgalign Holdings, Inc.) shipped orders weeks or months before its customers had originally requested delivery, thereby pulling sales forward from future quarters, to address projected quarterly revenue shortfalls. In some instances, RTI did so after requesting and obtaining customer permission; in other instances, RTI shipped orders early without customer approval and then prematurely recognized revenue for the sales. In multiple quarters, RTI would not have met its revenue guidance without these undisclosed pull-forwards. RTI and its former senior management, including its CFO until September 2017, Robert Jordheim, did not disclose to investors that RTI's apparent success at achieving its revenue guidance resulted from its reliance on pull-forwards, and they did not disclose the known uncertainty that this practice created for RTI's future revenue streams. In 2020, RTI issued a restatement to correct, among other things, its premature recognition of revenue, in violation of generally accepted accounting principles (GAAP), for orders shipped early to customers without their approval. The Commission ordered the Respondents to pay $2,075,000.00 in civil money penalties to the Commission. The Commission also created a Fair Fund, pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, so the penalties paid can be distributed to harmed investors (the "Fair Fund"). *See* the Commission's Order: 33-11088.

The Fair Fund includes the $2,075,000.00 paid by the Respondents. The Fair Fund and has been deposited in an interest-bearing account at the U.S. Department of the Treasury's Bureau of the Fiscal Service, and any interest accrued will be added to the Fair Fund.

On March 1, 2023, the Commission issued an order appointing Heffler, Radetich & Saitta, LLP, as the Tax Administrator of the Fair Fund. *See* the Commission's Order:  Release No. 34-96997.

For more information, please contact the Commission:

Office of Distributions
Email: ENFOfficeofDistributions@sec.gov

*Modified: March 21, 2023*

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 11088 / August 3, 2022

SECURITIES EXCHANGE ACT OF 1934
Release No. 95415 / August 3, 2022

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 4318 / August 3, 2022

ADMINISTRATIVE PROCEEDING
File No. 3-20945

| | |
|---|---|
| In the Matter of<br><br>**SURGALIGN HOLDINGS, INC., and ROBERT P. JORDHEIM,**<br><br>Respondents. | **ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, SECTIONS 4C AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 102(e) OF THE COMMISSION'S RULES OF PRACTICE, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that public administrative and cease-and-desist proceedings be, and hereby are, instituted against Surgalign Holdings, Inc. ("Surgalign") (formerly known as RTI Surgical Holdings, Inc., and RTI Surgical, Inc.) ("RTI") and Robert P. Jordheim ("Jordheim") (collectively, "Respondents") pursuant to Section 8A of the Securities Act of 1933 ("Securities Act"), Sections 4C[1] and 21C of the Securities

---

[1]     Section 4C provides, in relevant part, that:

> The Commission may censure any person, or deny, temporarily or permanently, to any person the privilege of appearing or practicing before the Commission in any way, if that person is found . . . (1) not to possess the requisite qualifications to represent others; (2) to be lacking in character or integrity, or to have engaged

Exchange Act of 1934 ("Exchange Act"), and Rule 102(e)(1)(ii) of the Commission's Rules of Practice.[2]

## II.

In anticipation of the institution of these proceedings, Respondents have submitted Offers of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934, and Rule 102(e) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondents' Offers, the Commission finds[3] that:

## **INTRODUCTION**

1.      From 2015 through 2019, RTI shipped orders weeks or months before its customers had originally requested delivery, thereby pulling sales forward from future quarters, to address projected quarterly revenue shortfalls. In some instances, RTI did so after requesting and obtaining customer permission; in other instances, RTI shipped orders early without customer approval and then prematurely recognized revenue for the sales. In multiple quarters, RTI would not have met its revenue guidance without these undisclosed pull-forwards. RTI and its former senior management, including its CFO until September 2017, Robert Jordheim, did not disclose to investors that RTI's apparent success at achieving its revenue guidance resulted from its reliance on pull-forwards, and they did not disclose the known uncertainty that this practice created for RTI's future revenue streams. In 2020, RTI issued a restatement to correct, among other things, its

---

in unethical or improper professional conduct; or (3) to have willfully violated, or willfully aided and abetted the violation of, any provision of the securities laws or the rules and regulations issued thereunder.

[2]     Rule 102(e)(1)(ii) provides, in pertinent part, that:

The Commission may . . . deny, temporarily or permanently, the privilege of appearing or practicing before it . . . to any person who is found . . . to have engaged in unethical or improper professional conduct.

[3]     The findings herein are made pursuant to Respondents' Offers of Settlement and are not binding on any other person or entity in this or any other proceeding.

premature recognition of revenue, in violation of generally accepted accounting principles (GAAP), for orders shipped early to customers without their approval.

## RESPONDENTS

2.      **Surgalign Holdings, Inc.** (formerly known as **RTI Surgical Holdings, Inc.**, and **RTI Surgical, Inc.** ("**RTI**")) is a Delaware corporation with its principal place of business in Deerfield, Illinois, and currently has a class of securities registered pursuant to Section 12(b) of the Exchange Act. Surgalign's common stock trades on the Nasdaq exchange under the symbol "SRGA." Surgalign files periodic reports, including annual reports on Form 10-K and quarterly reports on Form 10-Q, with the Commission pursuant to Section 13(a) of the Exchange Act and related rules thereunder. During the relevant period, RTI had a class of securities registered pursuant to Section 12(b) of the Exchange Act, and its stock traded on the Nasdaq exchange under the symbol "RTIX."

3.      **Jordheim**, age 58, resides in Ponte Vedra Beach, Florida. Jordheim was RTI's CFO from June 2010 through September 2017, except that he served instead as RTI's Interim CEO from December 2016 through March 2017. Jordheim obtained a CPA license from the State of North Dakota in 1987, and that license lapsed in 1989.

## FACTS

### A.      RTI's Reliance on Pull-Forwards to Achieve Its Revenue Guidance, and Its Deficient Disclosures and Controls.

4.      RTI manufactured and sold surgical implants, such as orthopedic and spinal implants. Its pull-forward practices were concentrated in its Commercial division, which primarily sold RTI's products to large distributors that typically placed orders months in advance.

5.      Without the use of pull-forwards, including unauthorized early shipments, RTI would not have achieved its quarterly revenue guidance from Q1 2015 through Q1 2016, except in Q3 2015 (when RTI missed its guidance because of a single large customer's resistance to a pull-forward). RTI periodically continued to use pull-forwards to help achieve its revenue guidance or analyst estimates in 2016 through 2019.

6.      Members of RTI's former senior management, including Jordheim, discussed opportunities for pull-forwards, including during regular staff meetings. RTI employees expressed concern about the impact of pull-forwards on future revenue and customer relationships, and suggested setting more conservative revenue targets, but were overruled by RTI's former senior management. When RTI needed additional revenue to meet financial targets, Jordheim and other former senior management asked the Commercial division to identify additional potential pull-forwards and discussed specific customers that could be targeted for pull-forwards, and Jordheim and other former senior management approved discounts to induce customers to accept early shipments. Jordheim and other former senior management regularly received information about the volume of pull-forwards and their impact on RTI's ability to achieve future revenue targets.

7.      RTI and members of its former senior management, including Jordheim, also knew or should have known that RTI sent some shipments early to customers without their approval and that RTI recognized revenue prematurely for those shipments. RTI, Jordheim, and other former senior management failed to implement controls reasonably designed to ensure that RTI obtained and documented customer approval for early shipments. Rather, RTI employees typically relied on verbal customer approvals, and in some instances, they did not request or receive approval at all. RTI, Jordheim, and other former senior management also failed to implement controls reasonably designed to ensure that RTI properly recorded revenue in the correct period for shipments where customers did not agree to early delivery.

8.      RTI's reliance on pull-forwards, including unauthorized early shipments, disguised RTI's true business performance and resulted in uncertainties for RTI's business and future operating results that RTI and its former senior management, including Jordheim, did not disclose. The use of pull-forwards cannibalized future sales and resulted in revenue shortfalls in future quarters that RTI filled with additional pull-forwards. RTI and its former senior management, including Jordheim, did not disclose that RTI was using early shipments to address revenue shortfalls, that RTI did not have enough orders to achieve its quarterly revenue guidance without using pull-forwards, or that earlier pull-forwards had significantly reduced the amount of available future orders. Nor did RTI, Jordheim, or other former senior management disclose that RTI was recognizing revenue prematurely for unauthorized early shipments in violation of generally accepted accounting principles (GAAP). RTI, Jordheim, and other former senior management also failed to disclose that RTI's use of pull-forwards jeopardized RTI's future revenue streams when its most significant customers imposed restrictions on future early shipments and required RTI to agree to substantial discounts or forgo annual fee increases to convince customers to accept pull-forwards.

9.      Members of RTI's former senior management, including Jordheim, prepared and reviewed RTI's Commission filings, and participated in RTI's earnings calls. RTI failed to ensure that these disclosures were accurate and complete, despite its customers' objections and employees' concerns about the effect of the early shipments on customer relationships.

10.      Members of RTI's former senior management, including Jordheim, signed management representation letters to RTI's auditor, letters which stated inaccurately that RTI's financial statements had been prepared and presented in accordance with GAAP. Jordheim and other former senior management did not disclose to RTI's auditor that RTI had relied on pull-forwards to achieve its revenue guidance, that RTI had recognized revenue prematurely for unauthorized early shipments, or that RTI's accounting records omitted essential details regarding RTI's unauthorized early shipments.

**B.      RTI's Reliance on Pull-Forwards, Including Unauthorized Early Shipments, to Achieve Revenue Guidance in 2015.**

11.      ***RTI used $5.8 million of pull-forwards to meet revenue projections in Q1 2015.*** In Q1 2015, RTI's former senior management, including Jordheim, determined that RTI was likely to miss its revenue guidance as a result of shortfalls in its international sales and because RTI had previously used pull-forwards in 2014. In response, they elected to pull forward sales to achieve

RTI's Q1 revenue guidance. Jordheim had concluded that RTI was generating a disproportionate amount of its revenue at the end of each quarter, and he reported to other former senior management that this was "not a good trend." Nevertheless, RTI used $5.8 million of pull-forwards to meet its revenue guidance for Q1 2015. RTI did not disclose its use of pull-forwards in its Form 10-Q, earnings release, or earnings call; rather, RTI's former senior management suggested during the earnings call that its success occurred because "The orders from our commercial partners just keep coming in."

12.      ***RTI used $6.2 million of pull-forwards to meet revenue projections in Q2 2015.*** In early June 2015, Jordheim informed other former senior management that RTI was likely to fall short of its Q2 guidance. RTI's former senior management described RTI's Q2 forecast internally as "very concerning" and issued directions to "accelerate" sales. Jordheim and other former senior management received regular updates tracking RTI's pull-forward efforts. When the quarter ended, RTI's former senior management credited the Commercial division with "stepp[ing] up big this quarter to offset shortfalls" by using $6.2 million of pull forwards to bridge the revenue gap. RTI and its former senior management, including Jordheim, did not disclose RTI's use of pull-forwards in RTI's Form 10-Q, earnings release, or earnings call, including when RTI announced in its Q2 2015 earnings release (which was an exhibit to RTI's 8-K filed with the SEC on July 30, 2015) that its revenue had exceeded its guidance for the quarter.

13.      ***RTI attempted to use unauthorized early shipments and other pull-forwards to meet revenue projections in Q3 2015.*** When RTI's Q3 sales started to fall short of expectations, RTI's former senior management described the trend as "really unacceptable" and directed employees to use early shipments to bridge the gap to RTI's revenue guidance and "deliver on our commitment to the street." RTI's former senior management warned that "We would all be better off" if RTI did not disappoint investors by falling short of its revenue guidance. During the quarter, RTI shipped $8.4 million of pull-forwards, including a $2 million unauthorized early shipment to a major customer. The customer complained that the unauthorized early shipment had caused its "inventory levels [to] go sky high" and directed RTI "to not ship ANYTHING early without prior approvals." Despite its use of unauthorized early shipments and other pull-forwards, RTI ultimately missed its guidance because another one of its largest customers refused a $2.5 million pull-forward, which was the exact amount of RTI's shortfall in Q3.

14.      ***RTI used $3.8 million in pull-forwards, including unauthorized early shipments, and a $7.2 million one-time transaction to meet revenue projections in Q4 2015.*** At the end of 2015, RTI used $3.8 million of pull forwards, including unauthorized early shipments, to meet revenue guidance. During the quarter, Jordheim told a subordinate to "ship whatever it takes" to achieve forecasted Commercial revenue targets. He was told that RTI planned to ship $1.4 million of goods to a major customer, and that the shipment would largely exhaust that customer's orders through Q1 2016. After receiving the shipment, the customer complained to RTI and insisted that RTI must obtain the customer's approval before sending any shipments in the future. Jordheim and other former senior management were told about this customer's new directive and that it was a "response" to RTI's December 2015 shipments. They were also told that this directive would make it more difficult for RTI to achieve future revenue targets because RTI had planned to pull forward that customer's sales into Q1 2016.

15.     In addition, at RTI's request, another customer agreed to a one-time $7.2 million inventory transaction in Q4 2015 in lieu of continuing a consignment arrangement for products. The customer received a substantial price discount to purchase the inventory upfront and eliminate future payments under the consignment arrangement, which would otherwise have continued through at least 2016. Internally, Jordheim and other former senior management deliberated about whether to disclose the effect of this one-time transaction, but they decided instead to refer to "continued strong orders" to explain RTI's revenues. RTI and its former senior management, including Jordheim, did not disclose this transaction or RTI's use of pull-forwards in RTI's 10-K, earnings release, or earnings call, including when RTI announced in its Q4 2015 earnings release (which was an exhibit to RTI's 8-K filed with the SEC on January 8, 2016) that its revenue had exceeded its guidance for the quarter.

## C.     RTI's Use of a $1.6 Million Unauthorized Early Shipment and Other Pull-Forwards in Q1 2016 to Achieve Revenue Guidance.

16.     RTI's ability to meet its revenue guidance in early 2016 was jeopardized by poor business performance and shortfalls created by a major customer's objections to RTI's unauthorized early shipments, which kept RTI from pulling forward $3 million of that customer's sales into Q1 2016. At the quarter end, another customer also rejected RTI's request for a $1 million pull-forward, despite RTI's offer of an unusually large discount. Jordheim understood that this meant that RTI would "have no buffer" if some divisions missed their revenue targets. RTI's former senior management wrote to RTI's business leaders that "There is no cushion, no room for error. We need to hit the guidance, at a minimum," and were kept informed about plans to pull forward millions of dollars in shipments from future quarters into Q1 2016.

17.     RTI achieved its Q1 2016 revenue guidance and analyst estimates of revenue by relying on $3.3 million in pull-forwards, which included a $1.6 million unauthorized early shipment to a major RTI customer. RTI employees decided that they were "not seeking [the customer's] authorization for early shipments," and Jordheim was informed in an email that RTI planned to "ship [to the customer] and deal with any issues later." RTI identified orders for which the customer had specified delivery dates through June 2, and shipped those orders on March 29, in violation of its contractual arrangement with the customer. On April 1, the customer contacted RTI to object to this early shipment, because the order had been delivered early without authorization and the customer lacked the storage and processing capacity to receive this shipment early and properly inspect it.

18.     Jordheim and other former senior management learned that the customer was "pretty upset about the amount of product we shipped at quarter end" and was "contemplating returning at least a subset of" the early shipments. Jordheim and other former senior management also learned that the customer requested "pre-approval" of any further early shipments. During the quarter close process, RTI's former senior management was kept updated about the discussions with the customer, including that RTI had "still not gotten a response" to RTI's offers of a discount to induce the customer to accept the shipment. The customer did not accept the shipment, or inform RTI that it would be accepting the shipment, until late in April 2016, after RTI had closed its books for Q1 2016.

19.     RTI recognized revenue for this shipment in Q1 2016 even though the revenue recognition criteria of ASC 605 (Revenue Recognition) were not satisfied: the shipment was not made pursuant to an arrangement with the customer; collectability was not reasonably assured; delivery had not occurred because the customer had not taken title or assumed the risks and rewards of ownership; and the price was not fixed or determinable because RTI had to retroactively offer a discount for the shipment, and did not know whether the customer would accept that offer. RTI and Jordheim never disclosed to investors or RTI's auditor that RTI had recognized revenue for this shipment in violation of GAAP, or that RTI had relied on this and other early shipments to achieve its revenue guidance, including when RTI announced in its Q1 2016 earnings release (which was an exhibit to RTI's 8-K filed with the SEC on April 28, 2016) that its revenue had exceeded its guidance for the quarter.

20.     In addition, Jordheim and other former senior management did not take any steps to prevent RTI from sending early shipments in the future without customer approval, or from recognizing revenue for such shipments; two months later, at the end of Q2, RTI again sent a $1.4 million early shipment to a major customer, despite that customer's clear instructions prohibiting such shipments.

## D.     RTI's Restatement and Jordheim's Compensation.

21.     In response to the Commission's investigation, RTI conducted an internal investigation. Based on the findings of that investigation, RTI was required to prepare an accounting restatement due to its material noncompliance, as a result of misconduct, with the financial reporting requirements under the securities laws. On June 8, 2020, RTI filed an amended Form 10-K for the fiscal year ended December 31, 2018, which restated RTI's financial statements for the quarterly and annual periods of 2016, 2017, and 2018, and certain data on its financial statements, including annual revenues and income, for 2014 and 2015. Those financial statements were contained, as required by federal securities laws, in RTI's Forms 10-K and 10-Q that were filed starting with RTI's 2014 10-K on March 4, 2015, and ending with RTI's 2018 10-K on March 5, 2019. On June 8, 2020, RTI also filed its Form 10-K for the fiscal year ended December 31, 2019, which restated RTI's financial statements for the first three quarterly periods of 2019, which were contained, as required by federal securities laws, in RTI's Forms 10-Q that were filed from May 7, 2019, through November 7, 2019.

22.     RTI identified and corrected several errors in its financial statements, including that "revenue for certain invoices should have been recognized at a later date than when originally recognized" because RTI had shipped certain orders "early to customers without obtaining authorized approval" from the customer as required by GAAP. RTI acknowledged that "[s]ome of those unapproved shipments were shipped by employees in order to generate additional revenue and resulted in shipments being pulled from a future quarter into an earlier quarter." In addition, RTI determined that its disclosure controls and procedures were not effective and that it had material weaknesses in its internal controls over financial reporting.

23.     RTI offered and sold securities during the relevant period, including selling discounted stock under the company's employee stock purchase plan and issuing shares as compensation to certain employees under its employee incentive plan.

7

24.     As CFO or Interim CEO of RTI, Jordheim signed RTI's 2014, 2015, and 2016 10-Ks, and the 10-Qs filed during 2015, 2016, and the first two quarters of 2017 (among other filings). During the relevant period, Jordheim sold RTI stock to satisfy withholding obligations in connection with the vesting of previously awarded RTI securities. Jordheim has not reimbursed RTI for the bonuses, incentive-based compensation, and equity-based compensation that he received from RTI, or the profits he received from sales of RTI securities, during the twelve-month periods following the first public issuance or filing of the financial documents that were restated by RTI.

## VIOLATIONS

25.     Section 17(a)(2) of the Securities Act proscribes, in the offer or sale of a security, the receipt of "money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Section 17(a)(3) of the Securities Act proscribes, in the offer or sale of a security, engaging "in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." A violation of these provisions does not require scienter and may rest on a finding of negligence. *See Aaron v. SEC*, 446 U.S. 680, 702 (1980).

26.     Section 13(a) of the Exchange Act requires issuers to file such periodic and other reports as the Commission may prescribe and in conformity with such rules as the Commission may promulgate. Exchange Act Rules 13a-1, 13a-11, and 13a-13 require the filing of annual, current, and quarterly reports, respectively. The obligation to file such reports embodies the requirement that they be true and correct. *See, e.g., SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978). In addition to the information expressly required to be included in such reports, Rule 12b-20 of the Exchange Act requires issuers to add such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading. A violation of these reporting provisions does not require scienter and may rest on a finding of negligence. *See SEC v. Wills*, 472 F.Supp. 1250, 1268 (D.D.C. 1978).

27.     Quarterly and annual reports for issuers such as RTI must comply with Regulation S-K Item 303, which requires, among other things, a discussion of "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." It also requires that reports describe "any other significant components of revenues or expenses that, in the registrant's judgment, should be described in order to understand the registrant's results of operations." Instruction 3 to Item 303(a) of Regulation S-K requires that the "discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition." Item 303(b) of Regulation S-K requires discussion of material changes in such known trends or uncertainties in quarterly reports on Form 10-Q. By disguising the company's true business performance and cannibalizing future sales, RTI's use of pull-forwards created an uncertainty or event that was known to RTI and that was reasonably expected to have a material effect on its future revenue and that caused reported financial information not to be necessarily indicative of future operating results, which was not disclosed by

RTI. Likewise, RTI's quarterly earnings releases, which were filed as exhibits to RTI's current reports, disclosed that RTI's revenues had exceeded its revenue guidance, without disclosing the effect of pull-forwards. As a consequence, RTI violated Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, 13a-13, and 12b-20 thereunder.

28.     Exchange Act Rule 13a-14 requires that the principal financial officer of an issuer sign a certification that the issuer's Forms 10-K and 10-Q fairly present, in all material respects, the financial condition and results of operations of the company.

29.     Section 13(b)(2)(A) of the Exchange Act requires, among other things, Exchange Act Section 12 registrants to make and keep books, records, and accounts that accurately and fairly reflect the transactions and dispositions of their assets. Section 13(b)(2)(B) of the Exchange Act requires, among other things, Exchange Act Section 12 registrants to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in accordance with GAAP. Scienter is not an element of a violation of the books-and-records and internal control provisions. *See Ponce v. SEC*, 345 F.3d 722, 737 n.10 (9th Cir. 2003).

30.     Exchange Act Rule 13b2-1 prohibits any person from directly or indirectly falsifying or causing to be falsified any book, record, or account subject to Section 13(b)(2)(A). Exchange Act Rule 13b2-2 prohibits an officer or director of an issuer from, among other things, making or causing to be made a materially false or misleading statement to an accountant in connection with any required audit of the issuer's financial statements or the preparation of a report required to be filed with the Commission. Scienter is not required to establish a violation of either of these rules. *See SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1997).

31.     Section 304(a) of the Sarbanes-Oxley Act of 2002 requires the CEO and CFO of any issuer required to prepare an accounting restatement due to material noncompliance with the securities laws as a result of misconduct to reimburse the issuer for (1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month periods following the false filings, and (2) any profits realized from the sale of securities of the issuer during those 12-month periods.

32.     Based on the foregoing, the Commission finds that Surgalign violated Securities Act Sections 17(a)(2) and 17(a)(3); Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B); and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13.

33.     Based on the foregoing, the Commission finds that Jordheim violated Securities Act Sections 17(a)(2) and 17(a)(3), Exchange Act Rules 13a-14, 13b2-1, and 13b2-2, and Sarbanes-Oxley Act Section 304; was a cause of Surgalign's violations of Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B), and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13; and engaged in improper professional conduct proscribed by Exchange Act Section 4C(a)(2) and Rule 102(e)(1)(ii) of the Commission's Rules of Practice.

## SURGALIGN'S COOPERATION

34.     In determining to accept Surgalign's Offer, the Commission considered the cooperation it provided during the Commission's investigation.  Surgalign and RTI provided substantial cooperation to the Commission's staff throughout the investigation, including by disclosing information about conduct that the staff had not yet uncovered through its own investigation, conducting an internal investigation regarding this conduct, and providing the staff regular and detailed updates on the internal investigation and key documents identified through that investigation.  This cooperation substantially advanced the quality and efficiency of the staff's investigation and conserved Commission resources.

### IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents' Offers.

Accordingly, it is hereby ORDERED, effective immediately, that:

A.     Surgalign shall cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act; Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act; and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13.

B.     Jordheim shall cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act; Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act; Section 304 of the Sarbanes-Oxley Act; and Exchange Act Rules 12b-20, 13a-1, 13a-11, 13a-13, 13a-14, 13b2-1, and 13b2-2.

C.     Jordheim is denied the privilege of appearing or practicing before the Commission as an accountant.

D.     After five years from the date of the Order, Jordheim may request that the Commission consider his reinstatement by submitting an application to the attention of the Office of the Chief Accountant.

E.     In support of any application for reinstatement to appear and practice before the Commission as a preparer or reviewer, or a person responsible for the preparation or review, of financial statements of a public company to be filed with the Commission, other than as a member of an audit committee, as that term is defined in Section 3(a)(58) of the Exchange Act, Jordheim shall submit a written statement attesting to an undertaking to have his work reviewed by the independent audit committee of any public company for which he works or in some other manner acceptable to the Commission, as long as he practices before the Commission in this capacity and will comply with any Commission or other requirements related to the appearance and practice before the Commission as an accountant.

F.     In support of any application for reinstatement to appear and practice before the Commission as a member of an audit committee, as that term is defined in Section 3(a)(58) of the

Exchange Act, as a preparer or reviewer, or as a person responsible for the preparation or review, of any public company's financial statements that are filed with the Commission, Jordheim shall submit a statement prepared by the audit committee(s) with which Jordheim will be associated, including the following information:

  1. A summary of the responsibilities and duties of the specific audit committee(s) with which Jordheim will be associated;

  2. A description of Jordheim's role on the specific audit committee(s) with which Jordheim will be associated;

  3. A description of any policies, procedures, or controls designed to mitigate any potential risk to the Commission by such service;

  4. A description relating to the necessity of Jordheim's service on the specific audit committee; and

  5. A statement noting whether Jordheim will be able to act unilaterally on behalf of the Audit Committee as a whole.

  G. In support of any application for reinstatement to appear and practice before the Commission as an independent accountant (auditor) before the Commission, Jordheim must be associated with a public accounting firm registered with the Public Company Accounting Oversight Board (the "PCAOB") and Jordheim shall submit the following additional information:

  1. A statement from the public accounting firm (the "Firm") with which Jordheim is associated, stating that the firm is registered with the PCAOB in accordance with the Sarbanes-Oxley Act of 2002;

  2. A statement from the Firm with which Jordheim is associated that the Firm has been inspected by the PCAOB and that the PCAOB did not identify any criticisms of or potential defects in the Firm's quality control system that would indicate that Jordheim will not receive appropriate supervision; and

  3. A statement from Jordheim indicating that the PCAOB has taken no disciplinary actions against Jordheim since seven (7) years prior to the date of the Order other than for the conduct that was the basis for the Order.

  H. In support of any application for reinstatement, Jordheim shall provide documentation showing that he is currently licensed as a certified public accountant ("CPA") and that he has resolved all other disciplinary issues with any applicable state boards of accountancy. If Jordheim is not currently licensed as a CPA, he shall provide documentation showing that Jordheim's licensure is dependent upon reinstatement by the Commission.

  I. In support of any application for reinstatement, Jordheim shall also submit a signed affidavit truthfully stating, under penalty of perjury:

1. That Jordheim has complied with the Commission suspension Order, and with any related orders and undertakings, including any orders in *In the Matter of Surgalign Holdings, Inc. and Robert P. Jordheim* or any related Commission proceedings, including any orders requiring payment of disgorgement or penalties;

2. That Jordheim undertakes to notify the Commission immediately in writing if any information submitted in support of the application for reinstatement becomes materially false or misleading or otherwise changes in any material way while the application is pending;

3. That Jordheim, since the entry of the Order, has not been convicted of a felony or a misdemeanor involving moral turpitude that would constitute a basis for a forthwith suspension from appearing or practicing before the Commission pursuant to Rule 102(e)(2);

4. That Jordheim, since the entry of the Order:

   (a) has not been charged with a felony or a misdemeanor involving moral turpitude as set forth in Rule 102(e)(2) of the Commission's Rules of Practice, except for any charge concerning the conduct that was the basis for the Order;

   (b) has not been found by the Commission or a court of the United States to have committed a violation of the federal securities laws, and has not been enjoined from violating the federal securities laws, except for any finding or injunction concerning the conduct that was the basis for the Order;

   (c) has not been charged by the Commission or the United States with a violation of the federal securities laws, except for any charge concerning the conduct that was the basis for the Order;

   (d) has not been found by a court of the United States (or any agency of the United States) or any state, territory, district, commonwealth, or possession, or any bar thereof to have committed an offense (civil or criminal) involving moral turpitude, except for any finding concerning the conduct that was the basis for the Order; and

   (e) has not been charged by the United States (or any agency of the United States) or any state, territory, district, commonwealth, or possession, civilly or criminally, with having committed an act of moral turpitude, except for any charge concerning the conduct that was the basis for the Order;

5. That Jordheim's conduct is not at issue in any pending investigation of the Commission's Division of Enforcement, the PCAOB's Division of Enforcement and Investigations, any criminal law enforcement investigation, or

any pending proceeding of a State Board of Accountancy, except to the extent that such conduct concerns that which was the basis for the Order; and

6. That Jordheim has complied with any and all orders, undertakings, or other remedial, disciplinary, or punitive sanctions resulting from any action taken by any State Board of Accountancy, or other regulatory body.

J. Jordheim shall also provide a detailed description of:

1. Jordheim's professional history since the imposition of the Order, including:

   (a) all job titles, responsibilities and role at any employer;

   (b) the identification and description of any work performed for entities regulated by the Commission, and the persons to whom Respondent reported for such work; and

2. Jordheim's plans for any future appearance or practice before the Commission.

K. The Commission may conduct its own investigation to determine if the foregoing attestations are accurate.

L. If Jordheim provides the documentation and attestations required in this Order and the Commission (1) discovers no contrary information therein, and (2) determines that Jordheim truthfully and accurately attested to each of the items required in Respondent's affidavit, and the Commission discovers no information, including under Paragraph K, indicating that Jordheim has violated a federal securities law, rule or regulation or rule of professional conduct applicable to Jordheim since entry of the Order (other than by conduct underlying Jordheim's original Rule 102(e) suspension), then, unless the Commission determines that reinstatement would not be in the public interest, the Commission shall reinstate the respondent for cause shown.

M. If Jordheim is not able to provide the documentation and truthful and accurate attestations required in this Order or if the Commission has discovered contrary information, including under Paragraph K, the burden shall be on Jordheim to provide an explanation as to the facts and circumstances pertaining to the matter setting forth why Jordheim believes cause for reinstatement nonetheless exists and reinstatement would not be contrary to the public interest. The Commission may then, in its discretion, reinstate the Respondent for cause shown.

N. If the Commission declines to reinstate Jordheim pursuant to Paragraphs L and M, it may, at Jordheim's request, hold a hearing to determine whether cause has been shown to permit him to resume appearing and practicing before the Commission as an accountant.

O. Surgalign shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $2,000,000 to the Securities and Exchange Commission. Jordheim shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $75,000 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

13

Payment must be made in one of the following ways:

(1)    Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)    Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)    Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying the Respondents in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to D. Mark Cave, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549.

P.    Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the penalties referenced in paragraph O above. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondents agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondents' payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondents agree that they shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

Q.    Jordheim shall, within 14 days of the entry of this Order, reimburse Surgalign for a total of $206,831, representing bonuses, incentive-based compensation, equity-based compensation, and profits from sales of RTI stock, pursuant to Section 304(a) of the Sarbanes-Oxley Act. Jordheim shall simultaneously deliver proof of satisfying this reimbursement obligation to D. Mark Cave, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

R.      Surgalign acknowledges that the Commission is not imposing a civil penalty in excess of $2 million based upon its cooperation in a Commission investigation. If, at any time following the entry of the Order, the Division of Enforcement ("Division") obtains information indicating that Surgalign knowingly provided materially false or misleading information or materials to the Commission or in a related proceeding, the Division may, at its sole discretion and with prior notice to Surgalign, petition the Commission to reopen this matter and seek an order directing that Surgalign pay an additional civil penalty. Surgalign may contest by way of defense in any resulting administrative proceeding whether it knowingly provided materially false or misleading information, but may not: (1) contest the findings in the Order; or (2) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense.

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, Jordheim stipulates that the findings in this Order are true, and that such findings shall be accepted and deemed true, without further proof by any party, in any nondischargeability proceeding involving the Commission, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Jordheim under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Jordheim of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

By the Commission.

Vanessa A. Countryman
Secretary

15

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 96997 / March 1, 2023

**ADMINISTRATIVE PROCEEDING**
File No. 3-20945

|  |  |  |
|---|---|---|
| **In the Matter of** | : | |
| | : | |
| **Surgalign Holdings, Inc. and** | : | **ORDER APPOINTING** |
| **Robert P. Jordheim,** | : | **TAX ADMINISTRATOR** |
| | : | |
| **Respondents.** | : | |

On May 4, 2022, the Commission issued an Omnibus Order Directing the Engagement of Two Tax Administrators for Appointment on a Case-By-Case Basis in Administrative Proceedings that Establish Distribution Funds (the "Omnibus Order").[1] The Omnibus Order engaged Miller Kaplan Arase LLP and Heffler, Radetich & Saitta, LLP to serve as the Commission's tax administrator ("Tax Administrator"), for selection and appointment on an individual case basis, for calendar years 2022 through 2024 in administrative proceedings where the distribution fund may incur tax-related obligations as a Qualified Settlement Fund ("QSF") under the Department of the Treasury Regulation § 1.468B-1(c).

The Director of the Division of Enforcement is authorized to appoint a Tax Administrator pursuant to the Omnibus Order.[2] The Commission staff has requested the appointment of Heffler, Radetich & Saitta, LLP as the Tax Administrator for the QSF in the above-referenced proceeding.

Accordingly, IT IS ORDERED that, pursuant to the Omnibus Order, Heffler, Radetich & Saitta, LLP is appointed as the Tax Administrator for the QSF in the above-referenced proceeding.

For the Commission, by the Division of Enforcement, pursuant to delegated authority.[3]

Vanessa A. Countryman
Secretary

---

[1] Exchange Act Rel. No. 94845 (May 4, 2022).
[2] *See* Delegation of Authority to Director of the Division of Enforcement, Securities Act Rel. No. 10900 (Dec. 10, 2020).
[3] 17 C.F.R. § 200.30-4(a)(21)(ii).

Case 23-90731 Document 177 Filed in TXSB on 07/06/23 Page 33 of 28

7/5/23, 2:20 PM                Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2...

# Exhibit B

✕



# Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2015-2019

### Surgalign Holdings, Inc.

August 3, 2022

**In this article:**

☆ SRGA
0.00%



Surgalign Holdings, Inc.

DEERFIELD, Ill., Aug. 03, 2022 (GLOBE NEWSWIRE) -
- Surgalign Holdings, Inc., (NASDAQ: SRGA) reached
a settlement with the U.S. Securities and Exchange
Commission ("SEC") on August 3, 2022, concluding
and resolving in its entirety the previously
disclosed SEC investigation relating to activities
that occurred between 2015 and 2019 by RTI
Surgical Holdings, Inc., and RTI Surgical, Inc. and the
prior management. As reflected in the SEC's Order,
those activities included pulling sales forward from
future quarters to address projected quarterly
revenue shortfalls.

Under the terms of the settlement, the Company
has agreed to pay a civil penalty of US$2 million
which was recorded in full during the fourth
quarter of 2021. As part of the settlement, the
Company has also agreed to refrain from future

---

Quote Lookup                    🔍

**Related Quotes**

| Symbol | Last Price | Change | % Change |
|---|---|---|---|
| **SRGA**<br>Surgalign Holdings, Inc. | 0.1829 | 0.0000 | 0.00% |

**Recently Viewed ›**

| Symbol | Last Price | Change | % Change |
|---|---|---|---|
| **SRGA**<br>Surgalign Holdings, Inc. | 0.1829 | 0.0000 | 0.00% |
| **SRGAQ**<br>Surgalign Holdings, Inc. | 0.1328 | -0.0203 | -13.23% |
| **CHE**<br>Chemed Corporation | 534.22 | -4.66 | -0.86% |
| **CMSCX**<br>Columbia Small Cap Growth Fund | 21.91 | -0.08 | -0.36% |
| **MRMD**<br>MariMed Inc. | 0.4010 | -0.0090 | -2.20% |
| **FFLWF**<br>Fire & Flower Holdings Corp. | 0.1200 | 0.0000 | 0.00% |
| **MMM**<br>3M Company | 99.34 | -1.80 | -1.78% |
| **VSMAX**<br>Vanguard Small Cap Index Fund | 95.64 | +0.33 | +0.35% |
| **FRCSX**<br>Franklin Small Cap Value Fund Class R6 | 56.50 | +0.38 | +0.68% |
| **JLGMX**<br>JPMorgan Large Cap Growth Fund | 57.84 | -0.07 | -0.12% |
| **MSOS**<br>AdvisorShares Pure US Cannabis ETF | 5.89 | -0.12 | -2.08% |
| **JEMWX**<br>JPMorgan Emerging Markets Equity Fund ... | 30.25 | +0.32 | +1.07% |
| **PSDN**<br>AdvisorShares Poseidon Dynamic Cannabi... | 1.2165 | +0.0045 | +0.37% |
| **VFIAX**<br>Vanguard 500 Index Fund | 411.06 | +0.50 | +0.12% |
| **HITI**<br>High Tide Inc. | 1.2600 | -0.0500 | -3.8168% |

Search for

---

**Finance Home    Watchlists    My Portfolio    Markets    News    Videos    Yahoo Finance Plus 🌀    Screeners    •••**

Case 23-90731 Document 177 Filed in TXSB on 07/06/23 Page 34 of 104

7/5/23, 2:20 PM          Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2...

settlement, the Company is expected to receive $0.6 million from former executives related to recouped compensation.

The SEC acknowledged that in assessing Surgalign's offer of settlement, it took into consideration its substantial cooperation with the Commission's staff throughout the investigation, including by disclosing information about conduct that the staff had not yet uncovered through its own investigation, conducting an internal investigation regarding this conduct, and providing the staff regular and detailed updates on the internal investigation and key documents identified through that investigation.

"This investigation and the settlement reached stems from the activities of RTI and former senior management, not our current team. Reaching this settlement with the SEC will allow us to move forward without this uncertainty and is one more issue resolved in our effort to transform the company since we divested the RTI OEM business roughly two years ago," said David Lyle, Chief Financial Officer of Surgalign. "We believe we are now at the tail end of our transformation and are excited about the prospects of returning to growth in 2023 through new spine product offerings and the ramp of our HOLO Portal Surgical Guidance System coupled with the expansion of our AI platform."

**About Surgalign Holdings, Inc.**
Surgalign Holdings, Inc. is a global medical technology company committed to the promise of digital health to drive transformation across the surgical landscape. Uniquely aligned and resourced to advance the standard of care, the company is building technologies physicians and other health providers will look to for what is truly possible for their patients. Surgalign is focused on developing solutions that predictably deliver superior clinical and economic outcomes. Surgalign markets products throughout the United States and in more



**Studiocanal Germany Announces Quartet Of Promotions; CEO To Have Oversight Of Top Polish Distrib Kino Świat**
Deadline



**Paris Hilton's Wedding Gown Turned Many Heads**
Ad · Street Insider                     ...



**Sacramento police department finds former officer neglected his duty. Here's why**
Sacramento Bee



**Done Deals: Kit and Ace Finds New Owners, Birkenstock Takes Over Belgian Distribution + More News**
Footwear News



**Leicester City fined for UK anti-competitive arrangement with JD Sports**
Reuters



Finance Home   Watchlists   My Portfolio   Markets   News   Videos   Yahoo Finance Plus 🔵   Screeners         ...

network of top independent distributors. Surgalign

https://finance.yahoo.com/news/surgalign-reaches-settlement-securities-exchange-213400950.html                                      2/6

Case 23-90731 Document 177 Filed in TXSB on 07/06/23 Page 35 of 104

7/5/23, 2:20 PM          Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2...

is headquartered in Deerfield, IL, with commercial, innovation and design centers in San Diego, CA, Warsaw and Poznan, Poland, and Wurmlingen, Germany. Learn more at www.surgalign.com and connect on LinkedIn and Twitter.

**Forward Looking Statement**

This press release contains forward-looking statements that are based on management's current expectations, estimates and projections about our products, company, and industry, our management's beliefs, and certain assumptions made by our management. Words such as "anticipates," "expects," "intends," "plans," "believes," "seeks," "estimates," and other variations of such words and similar expressions are intended to identify such forward-looking statements. These statements are not guarantees of future performance and are subject to risks and uncertainties, including the risks described in our public filings with the U.S. Securities and Exchange Commission (SEC). Our actual results may differ materially from the anticipated results reflected in these forward-looking statements. Copies of the company's SEC filings may be obtained by contacting the company or the SEC or by visiting Surgalign's website at www.surgalign.com or the SEC's website at www.sec.gov.

Investor and Media Contact:          Surgalign C
Glenn Wiener                         Kristine Sir
T: +1 917 887 8434                   T: +1 619 20
E: gwiener@gwcco.com                 E: ksimmor

**Internet Without Landline For A Surprising Prices**
Ad · Super Energy | Search Ads

**Allegro says independent board to oversee PwC Australia's government business**
Reuters

**Stephen A. Smith speaks out about ESPN's layoffs: 'I could be next'**
CNN Business

**Spectre: The Rolls-Royce of EVs is finally here**
Yahoo Finance

**New Cancer Prostate Treatment Might Surprise You**
Ad · Aporia | Search Ads

Finance Home · Watchlists · My Portfolio · Markets · News · Videos · Yahoo Finance Plus · Screeners · ...

https://finance.yahoo.com/news/surgalign-reaches-settlement-securities-exchange-213400950.html          3/6

# Compare Bank Accounts ❶

| Initial Deposit | $25,000 |
|---|---|

**EV market: Tesla's surge leads record-breaking sales**
Yahoo Finance Video

**360 PERFORMANCE SAVINGS**

**Capital One**

FDIC Insured

| APY | | Min Balance for APY |
|---|---|---|
| **4.15%** | | **$0** |

Got about 5 minutes? That's all the time it takes to open an account.

**PLATINUM SAVINGS**

**CIT Bank.** Member FDIC

FDIC Insured

| APY | | Min Balance for APY |
|---|---|---|
| **4.95%** | | **$5,000** |

Savings starts at $100. Earn more with a minimum balance of $5000. FDIC Insure

**Netflix Stock Price Target Raised by Goldman Sachs As Wall Street Sees Growth Momentum**
The Hollywood Reporter

**ACCELERATE SAVINGS**

**citi**

FDIC Insured

| APY | | Min Balance for APY |
|---|---|---|
| **4.05%** | | **$1** |

No min deposit. Rate available in select markets. Grow your money safely & secu
App available to make banking easy. Member FDIC.

**NO PENALTY CD**

**CIT Bank.** Member FDIC

| APY | | Min Balance for APY |
|---|---|---|
| **4.90%** | | **$1,000** |

As of: 07/05/2023

Search for

Ad | Business Infoline

Case 23-90731    Document 177    Filed in TXSB on 07/06/23    Page 37 of 28

7/5/23, 2:20 PM          Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2...





## Recommended Stories

    

Finance Home    Watchlists    My Portfolio    Markets    News    Videos    Yahoo Finance Plus    Screeners    ...

**Jeff Bezos Is Paying $600K A Month In Rent To This Famous Musician — Here...**

**A 39-year-old CEO who was Harvard Law's youngest-ever grad earned over $1...**

**'High-Quality Growth Is the Key': Billionaire Ken Fisher Stays Heavily Invested in...**

**Here Are 97 of the Coolest Gadgets for This 2023**

**'Load Up,' Says Raymond James About These 2 'Strong Buy' Stocks**







Fortune

Zacks

Ad • VantagePoint          •••

Fortune

Business Insider

**Silver coins, promised profits, and an empty vault: How a silver dealer's slo...**

**Ford Motor Company (F) is a Trending Stock: Facts to Know Before Betting on It**

**A.I. Brain's Precise Predictions Stun Wall Street**

**Legendary investor Jeremy Grantham says the stock market has a 70% chance...**

**Over half a million silver coins just vanished — now the metals dealer behind...**



Reliable Exa EIXA

Screened by U.S. Postal Inspection Service

t 1479

10:30 9480 07.06

Part # 156146-434 MTW EXP 01/24

ITEM# 6460 0550 9480
(0231)

REF: 23-90731 SURGALIGN HOLDINGS

TO:   "Quijh dlpxeqixus shippingis:"

ORIGIN ID:LSDR   (859) 559-7085
RYAN REISINGER
820 N DEECH DRIVE
LEXINGTON, KY 40511
UNITED STATES US

SHIP DATE: 05JUL23
ACTWGT: 1.00 LB
CAD: 0910817/INET3700

BILL SENDER

TO  NATHAN OCHSNER, CLERK OF COURT
    BOB CASEY UNITED STATES COURTHOUSE
    515 RUSK ST

    HOUSTON TX 77002

THU – 06 JUL 10:30
PRIORITY OVERNIGHT

FedEx

E

77002
TX–US
1AF

ORIGINAL Proof of Claim, later withdrawn

7/14/2023

**United States Bankruptcy Court, Southern District of Texas**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| ☒ Surgalign Holdings, Inc. (Case No. 23-90731) |
| ☐ Andi's Belmarall, LCC (Case No. 23-90733) |
| ☐ Fourth Dimension Spine, LLC (Case No. 23-90735) |
| ☐ Holo Surgical Inc. (Case No. 23-90736) |
| ☐ HoloSurgical Technology Inc. (Case No. 23-90732) |
| ☐ Pioneer Surgical Technology NewCo Inc. (Case No. 23-90734) |
| ☐ Spinal Transition and Professional Services LLC (Case No. 23-90730) |
| ☐ Surgalign Spine Technologies, Inc. (Case No. 23-90737) |

## Modified Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Ryan Messner

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Address1: 570 Camphor Way
Address2:
Address3:
Address4:
City: Lexington
State: KY
Postal Code: 40509
Country:

Contact phone 18595597985
Contact email ryanmessner@hotmail.com

**Where should payments to the creditor be sent?** (if different)

Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact phone _____
Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

---

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7.  How much is the claim?**    $ 179,251.74 _____

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Losses due to SRGA withholding pertinent info - Please review
PLEADING details on docket under Case 23-90731 Document
177 Filed in TXSB on 07/06/23

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Proof of Claim                                                                page 2

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No<br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $_____ |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

_____          07/14/2023
Electronic Signature                        Date

**Name of the person who is completing and signing this claim**

| | | | |
|---|---|---|---|
| Name | Ryan | | Messner |
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 570 Camphor Way | | |
| | Number          Street | | |
| | Lexington | KY | 40509 |
| | City | State | ZIP Code          Country |
| Contact phone | 8595597985 | Email | ryanmessner@hotmail.com |

Proof of Claim                                                                 page 3

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:

City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
 Postal Code:

 Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**

☑ Yes
☐ No

Attachment Filename:

Total Claim Amount.pdf

**KROLL**

Electronic Proof of Claim Confirmation:  3400-1-VIVBA-538216251

Claim Electronically Submitted on (UTC) :  2023-07-14T20:01:57.928Z

Submitted by:  Ryan Messner
ryanmessner@hotmail.com

**KROLL**

ORIGINAL Proof of Claim, Withdrawal Form

7/25/2023

# United States Bankruptcy Court for the Southern District of Texas

Fill in this information to identify the debtor

| | |
|---|---|
| ◉ Surgalign Holdings, Inc. (Case No. 23-90731) | ◉ Pioneer Surgical Technology NewCo Inc. (Case No. 23-90734) |
| ◉ Spinal Transition and Professional Services LLC (Case No. 23-90730) | ◉ Fourth Dimension Spine, LLC (Case No. 23-90735) |
| ◉ HoloSurgical Technology Inc. (Case No. 23-90732) | ◉ Holo Surgical Inc. (Case No. 23-90736) |
| ◉ Andi's Belmarali, LLC (Case No. 23-90733) | ◉ Surgalign Spine Technologies, Inc. (Case No. 23-90737) |

# Claim Withdrawal Form

| Part 1: | Identify the Claim |
|---|---|

**Creditor Name and Address:**

Ryan Messner
Name

570 Camphor Way
Address

Lexington        KY        40509
City            State        Zip Code

Contact Phone: 859-559-7985

Contact Email: ryanmessner@hotmail.com

**Claim Number (if known):** 3400-1-VIVBA-538216251

**Date Claim Filed:** 7/14/2023
(mm/dd/yyyy)

**Total Amount of Claim Filed:** $179,251.74

| Part 2: | Sign Below |
|---|---|

**The person completing this form must sign and date it.**

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor. I hereby withdraw the above-referenced claim and authorize the Clerk of this Court, or their duly appointed Claims Agent, to reflect this withdrawal on the official claims register for the above referenced Debtor.

Executed on date 07/25/2023
(mm/dd/yyyy)

Signature

Ryan Messner
Print Name

Title (if applicable)

## DEFINITIONS

**Debtor:** The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.
**Creditor:** A creditor is any person, corporation, or other entity to which the debtor owed a debt.
**Proof of Claim:** A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

Completed claim withdrawal forms can be sent to the following address:

**Surgalign Holdings, Inc. Claims Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, NY 11232**

Or by email to:

**surgalignInfo@ra.kroll.com**

MODIFIED Proof of Claim

7/24/2023

## United States Bankruptcy Court, Southern District of Texas

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|
| ☒ Surgalign Holdings, Inc. (Case No. 23-90731) |
| ☐ Andi's Belmarall, LCC (Case No. 23-90733) |
| ☐ Fourth Dimension Spine, LLC (Case No. 23-90735) |
| ☐ Holo Surgical Inc. (Case No. 23-90736) |
| ☐ HoloSurgical Technology Inc. (Case No. 23-90732) |
| ☐ Pioneer Surgical Technology NewCo Inc. (Case No. 23-90734) |
| ☐ Spinal Transition and Professional Services LLC (Case No. 23-90730) |
| ☐ Surgalign Spine Technologies, Inc. (Case No. 23-90737) |

Modified Official Form 410

# Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| 1. | Who is the current creditor? | Ryan Messner |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | Has this claim been acquired from someone else? | ☑ No |
|---|---|---|
| | | ☐ Yes. From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|---|
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Address1: 570 Camphor Way | Address1: |
| | | Address2: | Address2: |
| | | Address3: | Address3: |
| | | Address4: | Address4: |
| | | City: Lexington | City: |
| | | State: KY | State: |
| | | Postal Code: 40509 | Postal Code: |
| | | Country: | Country: |
| | | Contact phone 18595597985 | Contact phone |
| | | Contact email ryanmessner@hotmail.com | Contact email |

| 4. | Does this claim amend one already filed? | ☐ No  ☑ Yes. Claim number on court claims registry (if known) 3400-1-VIVBA-538216251 | Filed on 07/14/2023 MM / DD / YYYY |
|---|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No  ☐ Yes. Who made the earlier filing? _____ |
|---|---|---|

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

**7. How much is the claim?**   $ 181,026.54

**Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Losses due to debtor withholding pertinent info - Please review PLEADING details on docket under Case 23-90731 Document 177 Filed in TXSB on 7/6/2023

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No
☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ___ ) that applies.  $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

☑ No
☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**  $ _____

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

07/24/2023

_____                    _____
Electronic Signature                                      Date

**Name of the person who is completing and signing this claim**

| | | |
|---|---|---|
| Name | Ryan | Messner |
| | First name        Middle name | Last name |

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   570 Camphor Way
Number        Street

Lexington          KY          40509
City              State       ZIP Code    Country

Contact phone   8595597985          Email   ryanmessner@hotmail.com

**Additional Noticing Addresses (if provided):**

**Additional Address 1**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Address 2**
Name:
Address1:
Address2:
Address3:
Address4:
City:
State:
Postal Code:
Country:

Contact Phone:
Contact Email:

**Additional Supporting Documentation Provided**
- [✓] Yes
- [ ] No

Attachment Filename:

Kroll Backup - July 24 2023.pdf

**KROLL**

Electronic Proof of Claim Confirmation:   3400-1-BQQCM-817385539

Claim Electronically Submitted on (UTC) :   2023-07-24T20:02:20.146Z

Submitted by:   Ryan Messner
                        ryanmessner@hotmail.com

KROLL

1099 Consolidated (Proof of Ownership)

2021

(Redacted to remove non-related securities)

| MORGAN STANLEY DOMESTIC HOLDINGS, INC. | Account No: | 37487972 |
| E*TRADE SECURITIES LLC | Account Name: | RYAN MESSNER |
| PO BOX 484 | Recipient's TIN: | ***-**-1716 |
| JERSEY CITY, NJ 07303-0484 | Account Executive No: | ET1 |
| | ORIGINAL: | 12/31/2021 |

**2021 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**     OMB NO. 1545-0715

**Covered Short–Term Gains or Losses on Gross Proceeds**
Report on **Form 8949, Part I** with **Box A** checked

| Box 6: Gross Proceeds | Box 5: Box Not Checked (Covered Security) | Box 12: Basis Reported to the IRS | Box 2: Type of Gain or Loss –Short–Term |

The 1099–B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property CUSIP (Box 1a) | Quantity Sold | Date Acquired (Box 1b) | Date Sold or Disposed (Box 1c) | Proceeds (Box 1d) | Cost or Other Basis (Box 1e) | Accrued Market Discount (Box 1f) | Wash Sale Loss Disallowed (Box 1g) | Gain/Loss Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 5,261.00000 | 11/01/2021 | 11/02/2021 | $5,576.00 | $5,524.05 | $0.00 | $0.00 | $51.95 | |
| COMMON STOCK | 24,226.00000 | 11/01/2021 | 11/02/2021 | $25,434.29 | $25,437.30 | $0.00 | $3.01 | ($3.01) | |
| CUSIP: 86882C105 | 513.00000 | 11/01/2021 | 11/02/2021 | $544.22 | $538.65 | $0.00 | $0.00 | $5.57 | |
| | 24,226.00000 | 11/01/2021 | 11/10/2021 | $22,527.18 | $25,198.05 | $0.00 | $2,670.87 | ($2,670.87) | |
| | 12.00000 | 11/01/2021 | 12/09/2021 | $9.48 | $11.89 | $0.00 | $2.41 | ($2.41) | |
| | 288.00000 | 11/01/2021 | 12/09/2021 | $228.32 | $264.94 | $0.00 | $36.62 | ($36.62) | |
| | 10,128.00000 | 11/01/2021 | 12/09/2021 | $7,998.40 | $9,519.94 | $0.00 | $1,521.54 | ($1,521.54) | |
| | 288.00000 | 11/01/2021 | 12/09/2021 | $227.49 | $287.15 | $0.00 | $59.66 | ($59.66) | |
| | 6,188.00000 | 11/01/2021 | 12/09/2021 | $4,887.82 | $5,694.50 | $0.00 | $806.68 | ($806.68) | |
| | 1,300.00000 | 11/01/2021 | 12/09/2021 | $1,028.85 | $1,294.90 | $0.00 | $268.05 | ($268.05) | |
| | 2,300.00000 | 11/01/2021 | 12/09/2021 | $1,816.74 | $2,150.84 | $0.00 | $334.10 | ($334.10) | |
| | 100.00000 | 11/01/2021 | 12/09/2021 | $79.28 | $92.02 | $0.00 | $12.74 | ($12.74) | |
| | 500.00000 | 11/01/2021 | 12/09/2021 | $394.94 | $467.62 | $0.00 | $72.68 | ($72.68) | |
| | 800.00000 | 11/01/2021 | 12/09/2021 | $631.91 | $798.79 | $0.00 | $166.88 | ($166.88) | |
| | 2,612.00000 | 11/01/2021 | 12/09/2021 | $2,063.18 | $2,605.15 | $0.00 | $541.97 | ($541.97) | |
| | 299.00000 | 11/01/2021 | 12/09/2021 | $237.24 | $299.08 | $0.00 | $61.84 | ($61.84) | |
| | 12.00000 | 11/01/2021 | 12/09/2021 | $9.59 | $11.04 | $0.00 | $1.45 | ($1.45) | |
| | 2,612.00000 | 11/01/2021 | 12/09/2021 | $2,070.72 | $2,403.69 | $0.00 | $332.97 | ($332.97) | |

**Details for CUSIP 86882C105 continue on the following page**

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT), KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| | |
|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No: 37487972<br>Account Name: RYAN MESSNER<br>Recipient's TIN: ***-**-1716<br><br>Account Executive No: ET1<br><br>ORIGINAL: 12/31/2021 |

**2021 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**      OMB NO. 1545-0715

### Covered Short-Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I** with **Box A** checked

**Box 6:** Gross Proceeds      **Box 5:** Box Not Checked (Covered Security)      **Box 12:** Basis Reported to the IRS      **Box 2:** Type of Gain or Loss –Short–Term

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 1,300.00000 | 11/01/2021 | 12/09/2021 | $1,031.91 | $1,195.94 | $0.00 | $164.03 | ($164.03) | |
| COMMON STOCK | 800.00000 | 11/01/2021 | 12/09/2021 | $633.33 | $736.20 | $0.00 | $102.87 | ($102.87) | |
| CUSIP: 86882C105 | 100.00000 | 11/01/2021 | 12/09/2021 | $78.99 | $99.73 | $0.00 | $20.74 | ($20.74) | |
| | 1,611.00000 | 11/01/2021 | 12/17/2021 | $1,241.08 | $1,437.75 | $0.00 | $196.67 | ($196.67) | |
| | 288.00000 | 11/01/2021 | 12/17/2021 | $221.72 | $273.41 | $0.00 | $51.69 | ($51.69) | |
| | 12.00000 | 11/01/2021 | 12/17/2021 | $9.24 | $11.32 | $0.00 | $2.08 | ($2.08) | |
| | 2,612.00000 | 11/01/2021 | 12/17/2021 | $2,010.92 | $2,480.60 | $0.00 | $469.68 | ($469.68) | |
| | 661.00000 | 11/01/2021 | 12/17/2021 | $504.92 | $628.47 | $0.00 | $123.55 | ($123.55) | |
| | 500.00000 | 11/01/2021 | 12/17/2021 | $385.19 | $443.78 | $0.00 | $58.59 | ($58.59) | |
| | 3,699.00000 | 11/01/2021 | 12/17/2021 | $2,847.77 | $3,301.22 | $0.00 | $453.45 | ($453.45) | |
| | 1,300.00000 | 11/01/2021 | 12/17/2021 | $1,000.84 | $1,232.91 | $0.00 | $232.07 | ($232.07) | |
| | 3,508.00000 | 11/01/2021 | 12/17/2021 | $2,701.77 | $3,130.75 | $0.00 | $428.98 | ($428.98) | |
| | 139.00000 | 11/01/2021 | 12/17/2021 | $107.01 | $132.16 | $0.00 | $25.15 | ($25.15) | |
| | 100.00000 | 11/01/2021 | 12/17/2021 | $76.39 | $94.96 | $0.00 | $18.57 | ($18.57) | |
| | 8.00000 | 11/01/2021 | 12/17/2021 | $6.15 | $7.14 | $0.00 | $0.99 | ($0.99) | |
| | 139.00000 | 11/01/2021 | 12/17/2021 | $106.17 | $131.92 | $0.00 | $25.75 | ($25.75) | |
| | 5,889.00000 | 11/01/2021 | 12/17/2021 | $4,536.74 | $5,138.52 | $0.00 | $601.78 | ($601.78) | |
| | 160.00000 | 11/01/2021 | 12/17/2021 | $122.14 | $151.85 | $0.00 | $29.71 | ($29.71) | |
| | 1,300.00000 | 11/01/2021 | 12/17/2021 | $1,001.62 | $1,160.20 | $0.00 | $158.58 | ($158.58) | |
| | 2,300.00000 | 11/01/2021 | 12/17/2021 | $1,771.86 | $2,041.16 | $0.00 | $269.30 | ($269.30) | |
| | 19,663.00000 | 11/09/2021 | 11/10/2021 | $18,284.16 | $20,449.52 | $0.00 | $2,165.36 | ($2,165.36) | |
| | 1.00000 | 11/09/2021 | 11/10/2021 | $0.92 | $1.04 | $0.00 | $0.12 | ($0.12) | |
| | 100.00000 | 11/09/2021 | 11/10/2021 | $93.47 | $104.00 | $0.00 | $10.53 | ($10.53) | |
| | 10.00000 | 11/09/2021 | 11/10/2021 | $9.32 | $10.40 | $0.00 | $1.08 | ($1.08) | |
| | 1.00000 | 11/09/2021 | 12/09/2021 | $0.79 | $0.99 | $0.00 | $0.20 | ($0.20) | |
| | 10.00000 | 11/09/2021 | 12/09/2021 | $7.90 | $9.78 | $0.00 | $1.88 | ($1.88) | |
| | 100.00000 | 11/09/2021 | 12/09/2021 | $78.99 | $97.52 | $0.00 | $18.53 | ($18.53) | |
| | 18,889.00000 | 11/09/2021 | 12/09/2021 | $14,920.18 | $18,511.66 | $0.00 | $3,591.48 | ($3,591.48) | |
| | 774.00000 | 11/09/2021 | 12/09/2021 | $611.37 | $727.58 | $0.00 | $116.21 | ($116.21) | |
| | 100.00000 | 11/09/2021 | 12/17/2021 | $75.99 | $92.75 | $0.00 | $16.76 | ($16.76) | |

**Details for CUSIP 86882C105 continue on the following page**

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

|  | Account No: | 37487972 |
|---|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC. | Account Name: | RYAN MESSNER |
| E*TRADE SECURITIES LLC | Recipient's TIN: | ***-**-1716 |
| PO BOX 484 | | |
| JERSEY CITY, NJ 07303-0484 | Account Executive No: | ET1 |
|  | ORIGINAL: | 12/31/2021 |

**2021 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**                    **OMB NO. 1545-0715**

### Covered Short-Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I** with **Box A** checked

Box 6: Gross Proceeds          Box 5: Box Not Checked (Covered Security)          **Box 12:** Basis Reported to the IRS          **Box 2:** Type of Gain or Loss – **Short-Term**

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 1,600.00000 | 11/09/2021 | 12/17/2021 | $1,216.12 | $1,491.74 | $0.00 | $275.62 | ($275.62) | |
| COMMON STOCK | 1,270.00000 | 11/09/2021 | 12/17/2021 | $969.49 | $1,184.06 | $0.00 | $214.57 | ($214.57) | |
| CUSIP: 86882C105 | 10.00000 | 11/09/2021 | 12/17/2021 | $7.60 | $9.30 | $0.00 | $1.70 | ($1.70) | |
| | 3,210.00000 | 11/09/2021 | 12/17/2021 | $2,451.08 | $2,992.80 | $0.00 | $541.72 | ($541.72) | |
| | 11,505.00000 | 11/09/2021 | 12/17/2021 | $8,742.38 | $10,726.53 | $0.00 | $1,984.15 | ($1,984.15) | |
| | 1.00000 | 11/09/2021 | 12/17/2021 | $0.76 | $0.94 | $0.00 | $0.18 | ($0.18) | |
| | 404.00000 | 11/09/2021 | 12/17/2021 | $308.31 | $376.66 | $0.00 | $68.35 | ($68.35) | |
| | 900.00000 | 11/09/2021 | 12/17/2021 | $684.78 | $839.10 | $0.00 | $154.32 | ($154.32) | |
| | 774.00000 | 11/09/2021 | 12/17/2021 | $590.85 | $690.67 | $0.00 | $99.82 | ($99.82) | |
| | 10,589.00000 | 11/23/2021 | 12/09/2021 | $8,364.11 | $9,211.37 | $0.00 | $847.26 | ($847.26) | |
| | 10,589.00000 | 11/23/2021 | 12/17/2021 | $8,046.34 | $8,706.41 | $0.00 | $660.07 | ($660.07) | |
| | 5,411.00000 | 12/17/2021 | 12/17/2021 | $4,111.69 | $4,016.05 | $0.00 | $0.00 | $95.64 | |
| **Subtotals** | **194,000.00000** | | | **$165,736.01** | **$186,680.46** | **$0.00** | **$21,097.61** | **($20,944.45)** | |

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

1099 Consolidated (Proof of Ownership)

2022

(Redacted to remove non-related securities)

| | |
|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No:      37487972<br>Account Name:<br>Recipient's TIN:     RYAN MESSNER<br>     ***-**-1716<br><br>Account Executive No:   ET1<br><br>ORIGINAL:         12/31/2022 |

**2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**　　　　OMB NO. 1545-0715

**Covered Short-Term Gains or Losses on Gross Proceeds**
Report on **Form 8949, Part I** with Box A checked

Box 6: Gross Proceeds      Box 5: Box Not Checked (Covered Security)      **Box 12:** Basis Reported to the IRS      **Box 2:** Type of Gain or Loss –**Short-Term**

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC<br>COMMON STOCK<br>CUSIP: 86882C105 | 8.00000 | 11/01/2021 | 01/03/2022 | $6.30 | $7.23 | $0.00 | $0.93 | ($0.93) | |
| | 160.00000 | 11/01/2021 | 01/03/2022 | $125.90 | $154.51 | $0.00 | $28.61 | ($28.61) | |
| | 2,612.00000 | 11/01/2021 | 01/03/2022 | $2,055.35 | $2,507.04 | $0.00 | $451.69 | ($451.69) | |
| | 100.00000 | 11/01/2021 | 01/03/2022 | $79.13 | $88.22 | $0.00 | $9.09 | ($9.09) | |
| | 139.00000 | 11/01/2021 | 01/03/2022 | $109.38 | $133.57 | $0.00 | $24.19 | ($24.19) | |
| | 100.00000 | 11/01/2021 | 01/03/2022 | $79.12 | $88.22 | $0.00 | $9.10 | ($9.10) | |
| | 500.00000 | 11/01/2021 | 01/03/2022 | $393.44 | $448.59 | $0.00 | $55.15 | ($55.15) | |
| | 288.00000 | 11/01/2021 | 01/03/2022 | $226.62 | $276.33 | $0.00 | $49.71 | ($49.71) | |
| | 3,508.00000 | 11/01/2021 | 01/03/2022 | $2,760.41 | $3,165.22 | $0.00 | $404.81 | ($404.81) | |
| | 1,300.00000 | 11/01/2021 | 01/03/2022 | $1,022.96 | $1,246.07 | $0.00 | $223.11 | ($223.11) | |

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Page 11 of 32

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC. | Account No: | 37487972 | | | | | | |
| E*TRADE SECURITIES LLC | Account Name: | RYAN MESSNER | | | | | | |
| PO BOX 484 | Recipient's TIN: | ***-**-1716 | | | | | | |
| JERSEY CITY, NJ 07303-0484 | Account Executive No: | ET1 | | | | | | |
| | ORIGINAL: | 12/31/2022 | | | | | | |

**2022 FORM 1099-B: PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS, CONTINUED**   OMB NO. 1545-0715

### Covered Short−Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I** with **Box A** checked
**Box 6:** Gross Proceeds          **Box 5:** Box Not Checked (Covered Security)          **Box 12:** Basis Reported to the IRS          **Box 2:** Type of Gain or Loss −Short−Term

The 1099−B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property CUSIP (Box 1a) | Quantity Sold | Date Acquired (Box 1b) | Date Sold or Disposed (Box 1c) | Proceeds (Box 1d) | Cost or Other Basis (Box 1e) | Accrued Market Discount (Box 1f) | Wash Sale Loss Disallowed (Box 1g) | Gain/Loss Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 12.00000 | 11/01/2021 | 01/03/2022 | $9.44 | $11.44 | $0.00 | $2.00 | ($2.00) | |
| COMMON STOCK | 200.00000 | 11/01/2021 | 01/03/2022 | $158.23 | $176.44 | $0.00 | $18.21 | ($18.21) | |
| CUSIP: 86882C105 | 100.00000 | 11/01/2021 | 01/03/2022 | $79.13 | $88.22 | $0.00 | $9.09 | ($9.09) | |
| | 2,300.00000 | 11/01/2021 | 01/03/2022 | $1,809.84 | $2,063.30 | $0.00 | $253.46 | ($253.46) | |
| | 4,260.00000 | 11/01/2021 | 01/03/2022 | $3,352.15 | $3,758.11 | $0.00 | $405.96 | ($405.96) | |
| | 100.00000 | 11/01/2021 | 01/03/2022 | $78.69 | $96.57 | $0.00 | $17.88 | ($17.88) | |
| | 329.00000 | 11/01/2021 | 01/03/2022 | $260.91 | $290.24 | $0.00 | $29.33 | ($29.33) | |
| | 139.00000 | 11/01/2021 | 01/03/2022 | $109.38 | $134.17 | $0.00 | $24.79 | ($24.79) | |
| | 661.00000 | 11/01/2021 | 01/03/2022 | $520.13 | $639.13 | $0.00 | $119.00 | ($119.00) | |
| | 1,611.00000 | 11/01/2021 | 01/03/2022 | $1,267.68 | $1,453.25 | $0.00 | $185.57 | ($185.57) | |
| | 500.00000 | 11/01/2021 | 01/03/2022 | $395.74 | $441.09 | $0.00 | $45.35 | ($45.35) | |
| | 1,300.00000 | 11/01/2021 | 01/03/2022 | $1,022.96 | $1,172.58 | $0.00 | $149.62 | ($149.62) | |
| | 100.00000 | 11/01/2021 | 01/03/2022 | $79.15 | $88.22 | $0.00 | $9.07 | ($9.07) | |
| | 200.00000 | 11/01/2021 | 01/03/2022 | $158.62 | $176.44 | $0.00 | $17.82 | ($17.82) | |
| | 3,699.00000 | 11/01/2021 | 01/03/2022 | $2,910.70 | $3,338.67 | $0.00 | $427.97 | ($427.97) | |
| | 1,300.00000 | 11/01/2021 | 01/11/2022 | $1,091.83 | $1,217.22 | $0.00 | $125.39 | ($125.39) | |
| | 661.00000 | 11/01/2021 | 01/11/2022 | $555.15 | $624.47 | $0.00 | $69.32 | ($69.32) | |
| | 1,600.00000 | 11/01/2021 | 01/11/2022 | $1,349.54 | $1,375.99 | $0.00 | $26.45 | ($26.45) | |
| | 8.00000 | 11/01/2021 | 01/11/2022 | $6.72 | $7.05 | $0.00 | $0.33 | ($0.33) | |
| | 139.00000 | 11/01/2021 | 01/11/2022 | $116.74 | $130.48 | $0.00 | $13.74 | ($13.74) | |
| | 28.00000 | 11/01/2021 | 01/11/2022 | $23.80 | $23.96 | $0.00 | $0.16 | ($0.16) | |
| | 2,612.00000 | 11/01/2021 | 01/11/2022 | $2,193.73 | $2,449.09 | $0.00 | $255.36 | ($255.36) | |
| | 160.00000 | 11/01/2021 | 01/11/2022 | $134.38 | $150.96 | $0.00 | $16.58 | ($16.58) | |
| | 200.00000 | 11/01/2021 | 01/11/2022 | $170.03 | $170.76 | $0.00 | $0.73 | ($0.73) | |
| | 1,479.00000 | 11/01/2021 | 01/11/2022 | $1,246.15 | $1,271.93 | $0.00 | $25.78 | ($25.78) | |
| | 1,172.00000 | 11/01/2021 | 01/11/2022 | $995.03 | $1,007.92 | $0.00 | $11.89 | ($11.89) | |
| | 100.00000 | 11/01/2021 | 01/11/2022 | $83.99 | $77.02 | $0.00 | $0.00 | $6.97 | |
| | 3,508.00000 | 11/01/2021 | 01/11/2022 | $2,946.25 | $3,087.38 | $0.00 | $141.13 | ($141.13) | |
| | 329.00000 | 11/01/2021 | 01/11/2022 | $279.67 | $280.91 | $0.00 | $1.24 | ($1.24) | |
| | 72.00000 | 11/01/2021 | 01/11/2022 | $61.20 | $61.60 | $0.00 | $0.40 | ($0.40) | |

**THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.**
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No:<br>Account Name:<br>Recipient's TIN:<br><br>Account Executive No:<br><br>ORIGINAL: | 37487972<br>RYAN MESSNER<br>***-**-1716<br><br>ET1<br><br>12/31/2022 |
|---|---|---|

## 2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS, CONTINUED    OMB NO. 1545-0715

### Covered Short−Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I** with **Box A** checked
**Box 6:** Gross Proceeds          **Box 5:** Box Not Checked (Covered Security)          **Box 12:** Basis Reported to the IRS          **Box 2:** Type of Gain or Loss −Short−Term

The 1099−B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 2,300.00000 | 11/01/2021 | 01/11/2022 | $1,937.44 | $2,012.27 | $0.00 | $74.83 | ($74.83) | |
| COMMON STOCK | 200.00000 | 11/01/2021 | 01/11/2022 | $167.97 | $153.65 | $0.00 | $0.00 | $14.32 | |
| CUSIP: 86882C105 | 12.00000 | 11/01/2021 | 01/11/2022 | $10.08 | $11.18 | $0.00 | $1.10 | ($1.10) | |
| | 100.00000 | 11/01/2021 | 01/11/2022 | $85.01 | $85.54 | $0.00 | $0.53 | ($0.53) | |
| | 100.00000 | 11/01/2021 | 01/11/2022 | $84.99 | $85.56 | $0.00 | $0.57 | ($0.57) | |
| | 200.00000 | 11/01/2021 | 01/11/2022 | $169.97 | $171.15 | $0.00 | $1.18 | ($1.18) | |
| | 347.00000 | 11/01/2021 | 01/11/2022 | $292.30 | $305.32 | $0.00 | $13.02 | ($13.02) | |
| | 3,699.00000 | 11/01/2021 | 01/11/2022 | $3,106.66 | $3,256.60 | $0.00 | $149.94 | ($149.94) | |
| | 9.00000 | 11/01/2021 | 01/11/2022 | $7.58 | $7.74 | $0.00 | $0.16 | ($0.16) | |
| | 1,264.00000 | 11/01/2021 | 01/11/2022 | $1,061.59 | $1,112.18 | $0.00 | $50.59 | ($50.59) | |
| | 500.00000 | 11/01/2021 | 01/11/2022 | $421.18 | $437.50 | $0.00 | $16.32 | ($16.32) | |
| | 139.00000 | 11/01/2021 | 01/11/2022 | $116.74 | $131.08 | $0.00 | $14.34 | ($14.34) | |
| | 100.00000 | 11/01/2021 | 01/11/2022 | $85.01 | $85.57 | $0.00 | $0.56 | ($0.56) | |
| | 100.00000 | 11/01/2021 | 01/11/2022 | $83.99 | $94.35 | $0.00 | $10.36 | ($10.36) | |
| | 500.00000 | 11/01/2021 | 01/11/2022 | $425.03 | $427.70 | $0.00 | $2.67 | ($2.67) | |
| | 288.00000 | 11/01/2021 | 01/11/2022 | $241.88 | $269.94 | $0.00 | $28.06 | ($28.06) | |
| | 1,300.00000 | 11/01/2021 | 01/11/2022 | $1,091.83 | $1,143.73 | $0.00 | $51.90 | ($51.90) | |
| | 395.00000 | 11/01/2021 | 01/11/2022 | $327.80 | $343.74 | $0.00 | $15.94 | ($15.94) | |
| | 2,300.00000 | 11/01/2021 | 01/14/2022 | $1,908.69 | $1,983.37 | $0.00 | $74.68 | ($74.68) | |
| | 8.00000 | 11/01/2021 | 01/14/2022 | $6.64 | $6.97 | $0.00 | $0.33 | ($0.33) | |
| | 139.00000 | 11/01/2021 | 01/14/2022 | $115.35 | $129.11 | $0.00 | $13.76 | ($13.76) | |
| | 139.00000 | 11/01/2021 | 01/14/2022 | $115.35 | $129.71 | $0.00 | $14.36 | ($14.36) | |
| | 200.00000 | 11/01/2021 | 01/14/2022 | $165.97 | $167.01 | $0.00 | $1.04 | ($1.04) | |
| | 1,600.00000 | 11/01/2021 | 01/14/2022 | $1,327.79 | $1,354.13 | $0.00 | $26.34 | ($26.34) | |
| | 1,479.00000 | 11/01/2021 | 01/14/2022 | $1,227.37 | $1,253.05 | $0.00 | $25.68 | ($25.68) | |
| | 1,300.00000 | 11/01/2021 | 01/14/2022 | $1,078.83 | $1,204.39 | $0.00 | $125.56 | ($125.56) | |
| | 400.00000 | 11/01/2021 | 01/14/2022 | $331.95 | $333.75 | $0.00 | $1.80 | ($1.80) | |
| | 347.00000 | 11/01/2021 | 01/14/2022 | $287.96 | $300.96 | $0.00 | $13.00 | ($13.00) | |
| | 160.00000 | 11/01/2021 | 01/14/2022 | $132.78 | $149.38 | $0.00 | $16.60 | ($16.60) | |
| | 12.00000 | 11/01/2021 | 01/14/2022 | $9.96 | $11.06 | $0.00 | $1.10 | ($1.10) | |

**THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.**
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| | |
|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No:              37487972<br>Account Name:       RYAN MESSNER<br>Recipient's TIN:      ***-**-1716<br><br>Account Executive No:     ET1<br><br>ORIGINAL:               12/31/2022 |

**2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**      **OMB NO. 1545-0715**

**Covered Short-Term Gains or Losses on Gross Proceeds**
Report on **Form 8949, Part I** with **Box A** checked

Box 6: Gross Proceeds     Box 5: Box Not Checked (Covered Security)     **Box 12:** Basis Reported to the IRS     **Box 2:** Type of Gain or Loss -Short-Term

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 9.00000 | 11/01/2021 | 01/14/2022 | $7.47 | $7.63 | $0.00 | $0.16 | ($0.16) | |
| COMMON STOCK | 100.00000 | 11/01/2021 | 01/14/2022 | $83.07 | $83.55 | $0.00 | $0.48 | ($0.48) | |
| CUSIP: 86882C105 | 100.00000 | 11/01/2021 | 01/14/2022 | $83.07 | $83.51 | $0.00 | $0.44 | ($0.44) | |
| | 116.00000 | 11/01/2021 | 01/14/2022 | $96.26 | $96.62 | $0.00 | $0.36 | ($0.36) | |
| | 213.00000 | 11/01/2021 | 01/14/2022 | $176.93 | $177.53 | $0.00 | $0.60 | ($0.60) | |
| | 100.00000 | 11/01/2021 | 01/14/2022 | $82.99 | $93.36 | $0.00 | $10.37 | ($10.37) | |
| | 251.00000 | 11/01/2021 | 01/14/2022 | $208.30 | $210.83 | $0.00 | $2.53 | ($2.53) | |
| | 1,300.00000 | 11/01/2021 | 01/14/2022 | $1,078.83 | $1,130.90 | $0.00 | $52.07 | ($52.07) | |
| | 72.00000 | 11/01/2021 | 01/14/2022 | $59.75 | $60.10 | $0.00 | $0.35 | ($0.35) | |
| | 2,613.00000 | 11/01/2021 | 01/14/2022 | $2,168.44 | $2,273.39 | $0.00 | $104.95 | ($104.95) | |
| | 100.00000 | 11/01/2021 | 01/14/2022 | $82.99 | $83.44 | $0.00 | $0.45 | ($0.45) | |
| | 28.00000 | 11/01/2021 | 01/14/2022 | $23.24 | $23.37 | $0.00 | $0.13 | ($0.13) | |
| | 400.00000 | 11/01/2021 | 01/14/2022 | $332.27 | $334.02 | $0.00 | $1.75 | ($1.75) | |
| | 200.00000 | 11/01/2021 | 01/14/2022 | $166.13 | $167.14 | $0.00 | $1.01 | ($1.01) | |
| | 100.00000 | 11/01/2021 | 01/14/2022 | $83.07 | $83.49 | $0.00 | $0.42 | ($0.42) | |
| | 28.00000 | 11/01/2021 | 01/14/2022 | $23.26 | $23.39 | $0.00 | $0.13 | ($0.13) | |
| | 1,264.00000 | 11/01/2021 | 01/14/2022 | $1,048.95 | $1,099.46 | $0.00 | $50.51 | ($50.51) | |
| | 661.00000 | 11/01/2021 | 01/14/2022 | $548.54 | $617.95 | $0.00 | $69.41 | ($69.41) | |
| | 288.00000 | 11/01/2021 | 01/14/2022 | $239.00 | $267.10 | $0.00 | $28.10 | ($28.10) | |
| | 72.00000 | 11/01/2021 | 01/14/2022 | $59.81 | $60.15 | $0.00 | $0.34 | ($0.34) | |
| | 921.00000 | 11/01/2021 | 01/14/2022 | $764.31 | $772.98 | $0.00 | $8.67 | ($8.67) | |
| | 100.00000 | 11/01/2021 | 01/14/2022 | $82.99 | $83.42 | $0.00 | $0.43 | ($0.43) | |
| | 213.00000 | 11/01/2021 | 01/14/2022 | $176.76 | $177.39 | $0.00 | $0.63 | ($0.63) | |
| | 3,699.00000 | 11/01/2021 | 01/14/2022 | $3,069.67 | $3,220.11 | $0.00 | $150.44 | ($150.44) | |
| | 100.00000 | 11/01/2021 | 01/14/2022 | $82.99 | $83.48 | $0.00 | $0.49 | ($0.49) | |
| | 500.00000 | 11/01/2021 | 01/14/2022 | $414.93 | $431.22 | $0.00 | $16.29 | ($16.29) | |
| | 921.00000 | 11/01/2021 | 01/14/2022 | $765.03 | $773.58 | $0.00 | $8.55 | ($8.55) | |
| | 2,612.00000 | 11/01/2021 | 01/14/2022 | $2,167.61 | $2,423.32 | $0.00 | $255.71 | ($255.71) | |
| | 116.00000 | 11/01/2021 | 01/14/2022 | $96.36 | $96.70 | $0.00 | $0.34 | ($0.34) | |
| | 500.00000 | 11/01/2021 | 01/14/2022 | $414.93 | $435.07 | $0.00 | $20.14 | ($20.14) | |

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Page 14 of 32

| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No:<br>Account Name:<br>Recipient's TIN:<br><br>Account Executive No:<br><br>ORIGINAL: | 37487972<br>RYAN MESSNER<br>***-**-1716<br><br>ET1<br><br>12/31/2022 |
|---|---|---|

**2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED**     OMB NO. 1545-0715

**Covered Short-Term Gains or Losses on Gross Proceeds**
Report on **Form 8949, Part I** with **Box A** checked

| Box 6: Gross Proceeds | | Box 5: Box Not Checked (Covered Security) | | Box 12: Basis Reported to the IRS | | | Box 2: Type of Gain or Loss -**Short-Term** | |

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 160.00000 | 11/01/2021 | 04/01/2022 | $48.78 | $178.18 | $0.00 | $0.00 | ($129.40) | |
| COMMON STOCK | 200.00000 | 11/01/2021 | 04/01/2022 | $60.97 | $203.02 | $0.00 | $0.00 | ($142.05) | |
| CUSIP: 86882C105 | 1,936.00000 | 11/01/2021 | 04/01/2022 | $590.22 | $2,144.70 | $0.00 | $0.00 | ($1,554.48) | |
| | 28.00000 | 11/01/2021 | 04/01/2022 | $8.54 | $28.41 | $0.00 | $0.00 | ($19.87) | |
| | 100.00000 | 11/01/2021 | 04/01/2022 | $30.49 | $101.42 | $0.00 | $0.00 | ($70.93) | |
| | 921.00000 | 11/01/2021 | 04/01/2022 | $280.78 | $938.79 | $0.00 | $0.00 | ($658.01) | |
| | 72.00000 | 11/01/2021 | 04/01/2022 | $21.95 | $73.06 | $0.00 | $0.00 | ($51.11) | |
| | 139.00000 | 11/01/2021 | 04/01/2022 | $42.38 | $154.74 | $0.00 | $0.00 | ($112.36) | |
| | 661.00000 | 11/01/2021 | 04/01/2022 | $201.52 | $736.95 | $0.00 | $0.00 | ($535.43) | |
| | 116.00000 | 11/01/2021 | 04/01/2022 | $35.36 | $117.51 | $0.00 | $0.00 | ($82.15) | |
| | 100.00000 | 11/01/2021 | 04/01/2022 | $30.49 | $101.48 | $0.00 | $0.00 | ($70.99) | |
| | 100.00000 | 11/01/2021 | 04/01/2022 | $30.49 | $111.36 | $0.00 | $0.00 | ($80.87) | |
| | 213.00000 | 11/01/2021 | 04/01/2022 | $64.94 | $215.74 | $0.00 | $0.00 | ($150.80) | |
| | 400.00000 | 11/01/2021 | 04/01/2022 | $121.95 | $405.76 | $0.00 | $0.00 | ($283.81) | |
| | 139.00000 | 11/01/2021 | 04/01/2022 | $42.38 | $154.14 | $0.00 | $0.00 | ($111.76) | |
| | 100.00000 | 11/01/2021 | 04/01/2022 | $30.49 | $101.44 | $0.00 | $0.00 | ($70.95) | |
| | 1,600.00000 | 11/09/2021 | 01/03/2022 | $1,259.02 | $1,523.62 | $0.00 | $264.60 | ($264.60) | |
| | 1,270.00000 | 11/09/2021 | 01/03/2022 | $999.35 | $1,205.17 | $0.00 | $205.82 | ($205.82) | |
| | 3,210.00000 | 11/09/2021 | 01/03/2022 | $2,525.91 | $3,045.52 | $0.00 | $519.61 | ($519.61) | |
| | 404.00000 | 11/09/2021 | 01/03/2022 | $317.90 | $383.47 | $0.00 | $65.57 | ($65.57) | |
| | 10.00000 | 11/09/2021 | 01/03/2022 | $7.87 | $9.50 | $0.00 | $1.63 | ($1.63) | |
| | 11,505.00000 | 11/09/2021 | 01/03/2022 | $9,053.16 | $10,958.05 | $0.00 | $1,904.89 | ($1,904.89) | |
| | 900.00000 | 11/09/2021 | 01/03/2022 | $708.20 | $856.32 | $0.00 | $148.12 | ($148.12) | |
| | 100.00000 | 11/09/2021 | 01/03/2022 | $78.69 | $94.76 | $0.00 | $16.07 | ($16.07) | |
| | 1.00000 | 11/09/2021 | 01/03/2022 | $0.79 | $0.96 | $0.00 | $0.17 | ($0.17) | |
| | 774.00000 | 11/09/2021 | 01/03/2022 | $609.05 | $703.54 | $0.00 | $94.49 | ($94.49) | |
| | 3,210.00000 | 11/09/2021 | 01/11/2022 | $2,695.97 | $2,974.30 | $0.00 | $278.33 | ($278.33) | |
| | 10.00000 | 11/09/2021 | 01/11/2022 | $8.42 | $9.28 | $0.00 | $0.86 | ($0.86) | |
| | 900.00000 | 11/09/2021 | 01/11/2022 | $755.88 | $836.35 | $0.00 | $80.47 | ($80.47) | |
| | 3,163.00000 | 11/09/2021 | 01/11/2022 | $2,664.72 | $2,942.45 | $0.00 | $277.73 | ($277.73) | |

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303-0484 | Account No:<br>Account Name:<br>Recipient's TIN:<br><br>Account Executive No:<br><br>ORIGINAL: | 37487972<br>RYAN MESSNER<br>***-**-1716<br><br>ET1<br><br>12/31/2022 |
| --- | --- | --- |

**2022 FORM 1099-B: PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED** **OMB NO. 1545-0715**

## Covered Short-Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I** with **Box A checked**

Box 6: Gross Proceeds     Box 5: Box Not Checked (Covered Security)     Box 12: Basis Reported to the IRS     Box 2: Type of Gain or Loss **-Short-Term**

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| SURGALIGN HOLDINGS INC | 1.00000 | 11/09/2021 | 01/11/2022 | $0.84 | $0.93 | $0.00 | $0.09 | ($0.09) | |
| COMMON STOCK | 1,270.00000 | 11/09/2021 | 01/11/2022 | $1,066.63 | $1,176.99 | $0.00 | $110.36 | ($110.36) | |
| CUSIP: 86882C105 | 1,600.00000 | 11/09/2021 | 01/11/2022 | $1,343.79 | $1,488.12 | $0.00 | $144.33 | ($144.33) | |
| | 100.00000 | 11/09/2021 | 01/11/2022 | $84.25 | $92.54 | $0.00 | $8.29 | ($8.29) | |
| | 774.00000 | 11/09/2021 | 01/11/2022 | $650.06 | $686.37 | $0.00 | $36.31 | ($36.31) | |
| | 3,817.00000 | 11/09/2021 | 01/11/2022 | $3,205.74 | $3,550.83 | $0.00 | $345.09 | ($345.09) | |
| | 404.00000 | 11/09/2021 | 01/11/2022 | $339.31 | $374.51 | $0.00 | $35.20 | ($35.20) | |
| | 4,525.00000 | 11/09/2021 | 01/11/2022 | $3,804.92 | $4,209.48 | $0.00 | $404.56 | ($404.56) | |
| | 3,817.00000 | 11/09/2021 | 01/14/2022 | $3,167.60 | $3,513.20 | $0.00 | $345.60 | ($345.60) | |
| | 404.00000 | 11/09/2021 | 01/14/2022 | $335.27 | $370.52 | $0.00 | $35.25 | ($35.25) | |
| | 900.00000 | 11/09/2021 | 01/14/2022 | $746.88 | $827.47 | $0.00 | $80.59 | ($80.59) | |
| | 4,525.00000 | 11/09/2021 | 01/14/2022 | $3,755.14 | $4,160.31 | $0.00 | $405.17 | ($405.17) | |
| | 100.00000 | 11/09/2021 | 01/14/2022 | $82.99 | $91.29 | $0.00 | $8.30 | ($8.30) | |
| | 1,600.00000 | 11/09/2021 | 01/14/2022 | $1,327.79 | $1,472.33 | $0.00 | $144.54 | ($144.54) | |
| | 3,163.00000 | 11/09/2021 | 01/14/2022 | $2,624.87 | $2,903.02 | $0.00 | $278.15 | ($278.15) | |
| | 3,210.00000 | 11/09/2021 | 01/14/2022 | $2,663.87 | $2,942.63 | $0.00 | $278.76 | ($278.76) | |
| | 1.00000 | 11/09/2021 | 01/14/2022 | $0.83 | $0.92 | $0.00 | $0.09 | ($0.09) | |
| | 1,270.00000 | 11/09/2021 | 01/14/2022 | $1,053.93 | $1,164.46 | $0.00 | $110.53 | ($110.53) | |
| | 10.00000 | 11/09/2021 | 01/14/2022 | $8.30 | $9.16 | $0.00 | $0.86 | ($0.86) | |
| | 774.00000 | 11/09/2021 | 01/14/2022 | $642.32 | $678.73 | $0.00 | $36.41 | ($36.41) | |
| | 1,865.00000 | 11/09/2021 | 03/16/2022 | $615.20 | $2,145.76 | $0.00 | $0.00 | ($1,530.56) | |
| | 290.00000 | 11/09/2021 | 04/01/2022 | $86.93 | $306.51 | $0.00 | $0.00 | ($219.58) | |
| | 849.00000 | 11/09/2021 | 04/01/2022 | $253.74 | $975.96 | $0.00 | $0.00 | ($722.22) | |
| | 1,948.00000 | 11/09/2021 | 04/01/2022 | $593.88 | $2,197.23 | $0.00 | $0.00 | ($1,603.35) | |
| | 1.00000 | 11/09/2021 | 04/01/2022 | $0.30 | $1.13 | $0.00 | $0.00 | ($0.83) | |
| | 343.00000 | 11/09/2021 | 04/01/2022 | $104.57 | $373.57 | $0.00 | $0.00 | ($269.00) | |
| | 915.00000 | 11/09/2021 | 04/01/2022 | $273.46 | $1,041.21 | $0.00 | $0.00 | ($767.75) | |
| | 557.00000 | 11/09/2021 | 04/01/2022 | $169.81 | $606.77 | $0.00 | $0.00 | ($436.96) | |
| | 404.00000 | 11/09/2021 | 04/01/2022 | $123.17 | $439.17 | $0.00 | $0.00 | ($316.00) | |
| | 100.00000 | 11/09/2021 | 04/01/2022 | $30.49 | $112.29 | $0.00 | $0.00 | ($81.80) | |

**THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.**
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MORGAN STANLEY DOMESTIC HOLDINGS, INC.<br>E*TRADE SECURITIES LLC<br>PO BOX 484<br>JERSEY CITY, NJ 07303−0484 | Account No:<br>Account Name:<br>Recipient's TIN:<br><br>Account Executive No:<br><br>ORIGINAL: | 37487972<br>RYAN MESSNER<br>−**−**−1716<br><br>ET1<br><br>12/31/2022 | | | | | |

**2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS-CONTINUED** **OMB NO. 1545-0715**

## Covered Short−Term Gains or Losses on Gross Proceeds
Report on **Form 8949, Part I with Box A checked**

Box 6: Gross Proceeds     Box 5: Box Not Checked (Covered Security)     **Box 12:** Basis Reported to the IRS     **Box 2:** Type of Gain or Loss −Short−Term

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property<br>CUSIP<br>(Box 1a) | Quantity Sold | Date<br>Acquired<br>(Box 1b) | Date Sold<br>or Disposed<br>(Box 1c) | Proceeds<br>(Box 1d) | Cost or<br>Other Basis<br>(Box 1e) | Accrued<br>Market<br>Discount<br>(Box 1f) | Wash Sale<br>Loss<br>Disallowed<br>(Box 1g) | Gain/Loss<br>Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 10.00000 | 11/09/2021 | 04/01/2022 | $2.99 | $11.26 | $0.00 | $0.00 | ($8.27) | |
| COMMON STOCK | 100.00000 | 11/09/2021 | 04/01/2022 | $29.89 | $112.30 | $0.00 | $0.00 | ($82.41) | |
| CUSIP: 86882C105 | 110.00000 | 11/09/2021 | 04/01/2022 | $32.97 | $120.66 | $0.00 | $0.00 | ($87.69) | |
| | 731.00000 | 11/09/2021 | 04/01/2022 | $218.47 | $801.86 | $0.00 | $0.00 | ($583.39) | |
| | 429.00000 | 11/09/2021 | 04/01/2022 | $130.79 | $466.25 | $0.00 | $0.00 | ($335.46) | |
| | 304.00000 | 11/09/2021 | 04/01/2022 | $92.66 | $321.30 | $0.00 | $0.00 | ($228.64) | |
| | 3,210.00000 | 11/09/2021 | 04/01/2022 | $978.62 | $3,488.12 | $0.00 | $0.00 | ($2,509.50) | |
| | 180.00000 | 11/09/2021 | 04/01/2022 | $55.05 | $190.25 | $0.00 | $0.00 | ($135.20) | |
| | 200.00000 | 11/09/2021 | 04/01/2022 | $60.97 | $229.51 | $0.00 | $0.00 | ($168.54) | |
| | 643.00000 | 11/09/2021 | 04/01/2022 | $196.03 | $739.67 | $0.00 | $0.00 | ($543.64) | |
| | 957.00000 | 11/09/2021 | 04/01/2022 | $291.76 | $1,043.07 | $0.00 | $0.00 | ($751.31) | |
| | 3,676.00000 | 11/09/2021 | 04/01/2022 | $1,120.70 | $4,188.95 | $0.00 | $0.00 | ($3,068.25) | |
| | 1,952.00000 | 11/09/2021 | 04/01/2022 | $583.39 | $2,245.86 | $0.00 | $0.00 | ($1,662.47) | |
| | 10,589.00000 | 11/23/2021 | 01/03/2022 | $8,332.37 | $8,919.49 | $0.00 | $587.12 | ($587.12) | |
| | 7,028.00000 | 11/23/2021 | 01/11/2022 | $5,919.16 | $5,762.35 | $0.00 | $0.00 | $156.81 | |
| | 3,563.00000 | 11/23/2021 | 01/11/2022 | $2,992.80 | $2,922.18 | $0.00 | $0.00 | $70.62 | |
| | 1,800.00000 | 12/27/2021 | 01/03/2022 | $1,416.90 | $1,404.00 | $0.00 | $0.00 | $12.90 | |
| | 200.00000 | 12/27/2021 | 01/03/2022 | $158.14 | $156.00 | $0.00 | $0.00 | $2.14 | |
| | 895.00000 | 12/27/2021 | 01/03/2022 | $705.04 | $698.10 | $0.00 | $0.00 | $6.94 | |
| | 400.00000 | 12/27/2021 | 01/03/2022 | $315.14 | $312.00 | $0.00 | $0.00 | $3.14 | |
| | 7,766.00000 | 12/27/2021 | 01/03/2022 | $6,110.98 | $6,057.48 | $0.00 | $0.00 | $53.50 | |
| | 100.00000 | 12/27/2021 | 01/03/2022 | $79.08 | $78.00 | $0.00 | $0.00 | $1.08 | |
| | 7,111.00000 | 01/06/2022 | 01/14/2022 | $5,972.99 | $5,437.78 | $0.00 | $0.00 | $535.21 | |
| | 4,528.00000 | 01/12/2022 | 01/14/2022 | $3,757.58 | $3,758.24 | $0.00 | $0.66 | ($0.86) | |
| | 1,437.00000 | 01/12/2022 | 04/01/2022 | $438.10 | $1,494.69 | $0.00 | $0.00 | ($1,056.59) | |
| | 3,091.00000 | 01/12/2022 | 04/01/2022 | $923.80 | $3,215.09 | $0.00 | $0.00 | ($2,291.29) | |
| | 4,563.00000 | 01/18/2022 | 04/01/2022 | $1,363.74 | $4,745.52 | $0.00 | $0.00 | ($3,381.78) | |
| | 27,312.00000 | 02/10/2022 | 03/25/2022 | $9,121.34 | $11,880.72 | $0.00 | $0.00 | ($2,759.38) | |
| | 100.00000 | 02/10/2022 | 03/25/2022 | $33.40 | $43.49 | $0.00 | $0.00 | ($10.09) | |
| | 100.00000 | 02/10/2022 | 03/25/2022 | $33.98 | $43.50 | $0.00 | $0.00 | ($9.52) | |

**THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.**
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction
may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

MORGAN STANLEY DOMESTIC HOLDINGS, INC.
E*TRADE SECURITIES LLC
PO BOX 484
JERSEY CITY, NJ 07303-0484

| | |
|---|---|
| Account No: | 37487972 |
| Account Name: | RYAN MESSNER |
| Recipient's TIN: | ***-**-1716 |
| Account Executive No: | ET1 |
| ORIGINAL: | 12/31/2022 |

**2022 FORM 1099-B PROCEEDS FROM BROKER AND BARTER EXCHANGE TRANSACTIONS CONTINUED** OMB NO. 1545-0715

**Covered Short-Term Gains or Losses on Gross Proceeds**
Report on **Form 8949, Part I** with Box A checked

Box 6: Gross Proceeds          Box 5: Box Not Checked (Covered Security)          Box 12: Basis Reported to the IRS          Box 2: Type of Gain or Loss – **Short-Term**

The 1099-B data referenced by a Box Number is reported to the IRS. The additional information not referenced by a Box Number is not reported to the IRS, but may be helpful to complete your return.

| Description of property CUSIP (Box 1a) | Quantity Sold | Date Acquired (Box 1b) | Date Sold or Disposed (Box 1c) | Proceeds (Box 1d) | Cost or Other Basis (Box 1e) | Accrued Market Discount (Box 1f) | Wash Sale Loss Disallowed (Box 1g) | Gain/Loss Amount | Additional Information |
|---|---|---|---|---|---|---|---|---|---|
| SURGALIGN HOLDINGS INC | 702.00000 | 02/10/2022 | 03/25/2022 | $236.61 | $305.37 | $0.00 | $0.00 | ($68.76) | |
| COMMON STOCK | 359.00000 | 02/10/2022 | 03/25/2022 | $119.89 | $154.37 | $0.00 | $0.00 | ($34.48) | |
| CUSIP: 86882C105 | 1,327.00000 | 02/10/2022 | 03/25/2022 | $461.62 | $577.25 | $0.00 | $0.00 | ($115.63) | |
| | 100.00000 | 02/10/2022 | 03/25/2022 | $33.40 | $43.25 | $0.00 | $0.00 | ($9.85) | |
| | 1,800.00000 | 02/11/2022 | 03/16/2022 | $606.36 | $602.37 | $0.00 | $0.00 | $3.99 | |
| | 7,100.00000 | 02/11/2022 | 03/16/2022 | $2,342.06 | $2,378.50 | $0.00 | $0.00 | ($36.44) | |
| | 6,883.00000 | 02/11/2022 | 03/16/2022 | $2,318.66 | $2,303.05 | $0.00 | $0.00 | $15.61 | |
| | 430.00000 | 02/11/2022 | 03/16/2022 | $141.84 | $143.92 | $0.00 | $0.00 | ($2.08) | |
| | 6,670.00000 | 02/11/2022 | 03/16/2022 | $2,232.91 | $2,232.45 | $0.00 | $0.00 | $0.46 | |
| | 2,117.00000 | 02/11/2022 | 03/16/2022 | $708.70 | $708.35 | $0.00 | $0.00 | $0.35 | |
| | 100.00000 | 02/22/2022 | 03/16/2022 | $32.55 | $32.17 | $0.00 | $0.00 | $0.38 | |
| | 175.00000 | 02/22/2022 | 03/16/2022 | $56.90 | $56.30 | $0.00 | $0.00 | $0.60 | |
| | 7,903.00000 | 02/22/2022 | 03/16/2022 | $2,570.59 | $2,542.40 | $0.00 | $0.00 | $28.19 | |
| | 100.00000 | 02/22/2022 | 03/16/2022 | $32.49 | $32.16 | $0.00 | $0.00 | $0.33 | |
| | 16,412.00000 | 02/22/2022 | 03/16/2022 | $5,331.73 | $5,279.74 | $0.00 | $0.00 | $51.99 | |
| | 310.00000 | 02/22/2022 | 03/16/2022 | $100.76 | $99.72 | $0.00 | $0.00 | $1.04 | |
| | 5,000.00000 | 03/16/2022 | 03/16/2022 | $1,600.34 | $1,435.00 | $0.00 | $0.00 | $165.34 | |
| | 5,800.00000 | 03/16/2022 | 03/16/2022 | $1,855.22 | $1,664.60 | $0.00 | $0.00 | $190.62 | |
| | 800.00000 | 03/16/2022 | 03/16/2022 | $256.13 | $229.60 | $0.00 | $0.00 | $26.53 | |
| | 400.00000 | 03/16/2022 | 03/16/2022 | $127.95 | $114.40 | $0.00 | $0.00 | $13.55 | |
| **Subtotals** | **304,478.00000** | | | **$186,559.29** | **$227,657.56** | **$0.00** | **$12,447.20** | **($41,098.27)** | |

THIS IS YOUR FORM 1099 (COPY B FOR RECIPIENT). KEEP FOR YOUR RECORDS.
This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported.

Page 18 of 32

UNREALIZED Losses (Proof of Ownership)

2023

(Redacted to remove non-related securities)



✓ View By   | All Positions ⌄

≫   Symbol ▲   Actions   Last Price $   Change $   Change %   | SRGAQ |   | All securities ⌄ |   Reset Sort   Wash sale adjustment ⊕ ⬤   ✿ Customize

⌄   SRGAQ ⊕   ⌂ ☐   .00522   0.00   0.00%   34,000   3.49952   0.00   -$117,209.02   -98.51%   $1,774.80

Viewing 1 of 1 filtered results

| Symbol | | Qty # | Price Paid $ | Day's Gain $ | Total Gain $ | Total Gain % | Value $ |
|---|---|---|---|---|---|---|---|
| Cash | Transfer money | | | | | | $0.00 |
| Total | | | $118,988.82 | $0.00 | -$117,209.02 | -98.51% | $1,774.80 |

The total amount of the price paid column reflects the total costs of all open positions

[WS] This lot has been adjusted for wash sales. Learn more

Delayed quotes  ⊕  Upgrade to real-time quotes
Streaming quotes via MarketCaster

# MODIFICATION AND CLARIFICATION OF PLEADING

7/31/2023

MODIFICATION AND CLARIFICATION OF PLEADING, previously filed on July 6, 2023 and recorded on docket, namely Case 23-90731 Document 177 Filed in TXSB on 07/06/23 Page 1 of 28, et al.

United States Courts
Southern District of Texas
F I L E D

Nathan Ochsner

Clerk of Court                                            JUL 3 1 2023

P.O. Box 61010

Houston, TX 77208                                  Nathan Ochsner, Clerk of Court

RE:  Case 23-90731, Surgalign Holdings, Inc. et al (Common Stock SRGA/SRGAQ)

July 25, 2023

Honorable Nathan Ochsner:

As a continuation of my initial PLEADING filed on July 6, 2023 in the United States Court, Southern District of Texas, I would ask that the Court file the following modifications and clarifications to the docket in the aforementioned Case.

Original PLEADING filed on July 6, 2023, contained an inaccurate "original loss" estimated amount of $135,000.00, as I failed to consult all 1099 consolidated tax forms thoroughly prior to submission.  Furthermore, all REALIZED losses reported and documented on aforementioned 1099 consolidated tax forms were based on ticker SRGA, while all UNREALIZED losses would include BOTH tickers, SRGA and SRGAQ, neither of which have been sold as of the date of this memo, with a current share count of 34,000 (Thirty-Four Thousand shares).

Furthermore, the following Kroll claims have been submitted electronically:

ORIGINAL Claim_3400-1-VIVBA-538216251, filed 7/14/2023

Total Claim:  $179,251.74

Included REALIZED losses and UNREALIZED losses, EXCLUDING the 'current value' amount of said share count aforementioned, which was unintentionally excluded in ORIGINAL claim filing.

REVISED Claim_3400-1-BQQCM-817385539, filed 7/24/2023

Total Claim: $181,026.54

Included REALIZED losses and UNREALIZED losses, INCLUDING the 'current value' amount of said share count aforementioned, not previously included in ORIGINAL claim filing in error.

My original PLEADING included "emotional damages and interest," neither of which have been included in the aforementioned claims filed with Kroll.  To provide further clarification and transparency, however, said emotional damages and interest WILL be included in an Adversary Proceeding, in which the debtor's legal counsel has been notified, and attached herein as "EXHIBIT A."

As stated previously, I am PLEADING that the Court prioritize my claim as a PRIORITY claim.

Thank you for your time and consideration.

Ryan Messner
Paralegal | Notary Public, State at Large KY | Certified Remote Online Notary (RON)
859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us

# EXHIBIT A



Mr. Pesce:

It is my belief that Surgalign Holdings, Inc. (Case No. 23-90731) misrepresented pertinent information investors use to make decisions when they chose to ONLY issue a press release on August 3, 2022, attached herein as "EXHIBIT A," stating the following: "concluding and resolving in its entirety the previously disclosed SEC investigation relating to activities that occurred between 2015 and 2019 by RTI Surgical Holdings, Inc., and RTI Surgical, Inc. and the prior management."

After downloading, saving, and reviewing ALL press releases on Surgalign's website as of July 18, 2023, the company chose to ONLY issue a press release AFTER the investigation from 2015-2019 was completed (PR date August 3, 2022), and chose to settle with the Securities and Exchange Commission in August of 2022. There is NO PRESS RELEASE issued in 2020, or thereafter, that CLEARLY would notify potential investors of the "pull-forward" schemes, which were settled with the Securities and Exchange Commission. Or, was there a press release that I overlooked tied possibly to one of the other 7 COMPANIES that they chose to VOLUNTARILY file Chapter 11 on the same date of June 19, 2023, outlined below:

Andi's Belmarall, LCC (Case No. 23-90733)
Fourth Dimension Spine, LLC (Case No. 23-90735)
Holo Surgical Inc. (Case No. 23-90736)
HoloSurgical Technology Inc. (Case No. 23-90732)
Pioneer Surgical Technology NewCo Inc. (Case No. 23-90734)
Spinal Transition and Professional Services LLC (Case No. 23-90730)
Surgalign Spine Technologies, Inc. (Case No. 23-90737)

According to the 'About Us' page on Surgalign's website as of July 18, 2023, and attached herein as "EXHIBIT B," the company "began operating as "Surgalign" in July 2020. Furthermore, when you click on the July 2020 slide on the same 'About Us' page, it states "Surgalign Spine Technologies is created." So, was "Surgalign" created in July 2020, or was "Surgalign Spine Technologies" created in July 2020?

In the past 5 years, I have personally known, and even worked with, two men that were unknowingly to me, involved with similar tactics including, but not limited to, the following:

Securities fraud
Ponzi scheme
Investing advisor fraud
Mail fraud

$23 million in fines combined
21 years in federal prison combined

I bring up my previous affiliations, not to insinuate anything, but to reflect and compare the similarities between my former colleagues that I thought I personally knew, to a management team that appeared to have all of the perfect credentials, background, and contacts that would lead to a potential merger or acquisition for Surgalign Holdings. Their backgrounds almost seemed too good to be true on each of their bio pages, which I have also downloaded as of July 18, 2023.

Ironically, Surgalign or Surgalign Spine Technologies, was formed in July 2020, IMMEDIATELY after COVID-19 shut down the economy, including hospitals, and subsequently, this could have appeared to POTENTIALLY affect the FALSE, INFLATED revenue numbers provided by previous management, that were NEVER disclosed to potential investors until AFTER the 4-year SEC investigation was completed. Even then, the results of the 4-year investigation were not released until August 3, 2022. Obviously, Surgalign Holdings' management team KNEW about the SEC investigation when merging with RTI, and CHOSE not to disclose that pertinent investor information in the form of a press release, as to not draw attention to it, which would have turned away potential investors like myself. Instead, they chose to WITHHOLD that information by not issuing a PR, and made people believe that COVID-19 was the sole factor for the reduced sales, when in fact, the previous sales numbers were NOT true, and were being pulled forward.

I will be moving forward with an adversary proceeding through the United States District and Bankruptcy Courts, Southern District of Texas, including but not limited to all of the details herein, and will remind the Court of my initial PLEADING letter, attached herein as "EXHIBIT C," requesting priority status for my claim already submitted to Kroll, also attached herein as "EXHIBIT D" for reference.

Thank you for your time, and urgent attention to this matter.


Ryan

**Ryan Messner**
Paralegal | Notary Public, State at Large KY | Certified Remote Online Notary (RON)
859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us

*This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.*

EXHIBITS sent to debtor's legal counsel in email dated 7/18/2023

EXHIBIT A & EXHIBIT B attached herein for review

EXHIBIT C & EXHIBIT D not attached herein, as EXHIBIT C (original pleading already on file with the court, 28 pages dated July 6, 2023) and EXHIBIT D (Original Kroll claim, since REVISED and filed on 7/24/2023 and on file with Kroll)

## EXHIBIT A

August 3, 2022



# Surgalign Reaches Settlement with the Securities and Exchange Commission on Matters Related to Prior Management Between 2015-2019

DEERFIELD, Ill., Aug. 03, 2022 (GLOBE NEWSWIRE) -- Surgalign Holdings, Inc., (NASDAQ: SRGA) reached a settlement with the U.S. Securities and Exchange Commission ("SEC") on August 3, 2022, concluding and resolving in its entirety the previously disclosed SEC investigation relating to activities that occurred between 2015 and 2019 by RTI Surgical Holdings, Inc., and RTI Surgical, Inc. and the prior management. As reflected in the SEC's Order, those activities included pulling sales forward from future quarters to address projected quarterly revenue shortfalls.

Under the terms of the settlement, the Company has agreed to pay a civil penalty of US$2 million which was recorded in full during the fourth quarter of 2021. As part of the settlement, the Company has also agreed to refrain from future violations of specified provisions of federal securities laws and rules. In addition to the settlement, the Company is expected to receive $0.6 million from former executives related to recouped compensation.

The SEC acknowledged that in assessing Surgalign's offer of settlement, it took into consideration its substantial cooperation with the Commission's staff throughout the investigation, including by disclosing information about conduct that the staff had not yet uncovered through its own investigation, conducting an internal investigation regarding this conduct, and providing the staff regular and detailed updates on the internal investigation and key documents identified through that investigation.

"This investigation and the settlement reached stems from the activities of RTI and former senior management, not our current team. Reaching this settlement with the SEC will allow us to move forward without this uncertainty and is one more issue resolved in our effort to transform the company since we divested the RTI OEM business roughly two years ago," said David Lyle, Chief Financial Officer of Surgalign. "We believe we are now at the tail end of our transformation and are excited about the prospects of returning to growth in 2023 through new spine product offerings and the ramp of our HOLO Portal Surgical Guidance System coupled with the expansion of our AI platform."

### About Surgalign Holdings, Inc.

Surgalign Holdings, Inc. is a global medical technology company committed to the promise of digital health to drive transformation across the surgical landscape. Uniquely aligned and resourced to advance the standard of care, the company is building technologies physicians and other health providers will look to for what is truly possible for their patients. Surgalign is focused on developing solutions that predictably deliver superior clinical and economic

outcomes. Surgalign markets products throughout the United States and in more than 50 countries worldwide through an expanding network of top independent distributors. Surgalign is headquartered in Deerfield, IL, with commercial, innovation and design centers in San Diego, CA, Warsaw and Poznan, Poland, and Wurmlingen, Germany. Learn more at www.surgalign.com and connect on LinkedIn and Twitter.

**Forward Looking Statement**

This press release contains forward-looking statements that are based on management's current expectations, estimates and projections about our products, company, and industry, our management's beliefs, and certain assumptions made by our management. Words such as "anticipates," "expects," "intends," "plans," "believes," "seeks," "estimates," and other variations of such words and similar expressions are intended to identify such forward-looking statements. These statements are not guarantees of future performance and are subject to risks and uncertainties, including the risks described in our public filings with the U.S. Securities and Exchange Commission (SEC). Our actual results may differ materially from the anticipated results reflected in these forward-looking statements. Copies of the company's SEC filings may be obtained by contacting the company or the SEC or by visiting Surgalign's website at www.surgalign.com or the SEC's website at www.sec.gov.

Investor and Media Contact:
Glenn Wiener
T: +1 917 887 8434
E: gwiener@gwcco.com

Surgalign Contact:
Kristine Simmons
T: +1 619 206 4648
E: ksimmons@surgalign.com



Source: Surgalign Holdings, Inc.

# EXHIBIT B



# Creating the Future of Digital Health

We are Surgalign, a global medical technology company committed to the promise of digital health. We are investing to be a leader in developing and harnessing the incredible possibilities of digital surgery to redefine the very idea of "personalized medicine."

We began operating as Surgalign in July 2020, but with a legacy of clinically validated surgical device and biologic innovation stretching back 30 years. We are dedicated to advancing care and elevating outcomes. Surgalign markets products in the United States and in approximately 50 countries globally.

## Our Journey

From Pioneer Surgical to RTI Surgical to Surgalign to the addition of our powerful HOLO™ AI technology, here are some of the significant milestones in a journey that has brought us to the foothills of possibility.



| AUGUST 2018 | JULY 2020 |
| OCT 2020 | JAN 2022 |

**JULY 2020**

Surgalign Spine Technologies is created. A "new" company with a nearly 30 year heritage solely focused on advancing spine surgery and elevating clinical outcomes.



# Discover Our Products





About - Surgalign





## HOLO Portal™

## CervAlign® Anterior Cervical Plate System





Terms of Use

Web Privacy Policy and Transparency Disclosure Notice

© 2023 Surgalign Spine Technologies, Inc. All rights reserved.

Incorporation Date Discrepancies

Compared to Operation Starting Date

7/31/2023

# Inc. Effective Date Discrepancy

*The company's "About Us" page stated that operations began in July 2020, for BOTH Surgalign AND Surgalign Spine Technologies.  Yet, there are conflicting records in both Delaware and Illinois, showing incorporation dates ranging from 20 years PRIOR, to 2 months AFTER, the July 2020 date provided on the "About Us" page.*

## <u>Company "About Us" Page</u>

We began operating as Surgalign in July 2020, but with a legacy of clinically validated surgical device and biologic innovation stretching back 30 years. We are dedicated to advancing care and elevating outcomes. Surgalign markets products in the United States and in approximately 50 countries globally.

## Our Journey

From Pioneer Surgical to RTI Surgical to Surgalign to the addition of our powerful HOLO™ AI technology, here are some of the significant milestones in a journey that has brought us to the foothills of possibility.



# Delaware Department of State Division of Corporations

*The Delaware Department of State Division of Corporations website shows an Incorporation date of October 26, 2018 for SURGALIGN HOLDINGS, INC, almost <u>2 years prior</u> to the dates mentioned on the "About Us" page.*

|  | Entity Details |  |
|---|---|---|

### THIS IS NOT A STATEMENT OF GOOD STANDING

| File Number: | 7120322 | Incorporation Date / Formation Date: | **10/26/2018** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **SURGALIGN HOLDINGS, INC.** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

### REGISTERED AGENT INFORMATION

| Name: | **UNITED CORPORATE SERVICES, INC.** | | |
|---|---|---|---|
| Address: | **800 NORTH STATE STREET SUITE 304** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19901** |
| Phone: | **877-734-8300** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status, Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

*The Delaware Department of State Division of Corporations website shows an Incorporation date of April 25, 2000 for SURGALIGN SPINE TECHNOLOGIES, INC., over 20 years prior to the dates mentioned on the "About Us" page.*

| Entity Details | |
|---|---|

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 3217489 | Incorporation Date / Formation Date: | 4/25/2000 (mm/dd/yyyy) |
| Entity Name: | SURGALIGN SPINE TECHNOLOGIES, INC. | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | UNITED CORPORATE SERVICES, INC. | | |
| Address: | 800 NORTH STATE STREET SUITE 304 | | |
| City: | DOVER | County: | Kent |
| State: | DE | Postal Code: | 19901 |
| Phone: | 877-734-8300 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status, Tax & History Information

Submit

View Search Results     New Entity Search

# Illinois Secretary of State

*The Illinois Secretary of State's website does not return results for SURGALIGN HOLDINGS, INC.*

*The Illinois Secretary of State's website shows an Incorporation date of September 24, 2020 for SURGALIGN SPINE TECHNOLOGIES, INC., <u>2 months after</u> the dates mentioned on the "About Us" page.*

**The Office of the Illinois Secretary of State**

## Business Entity Search

**Entity Information**

| | | | |
|---|---|---|---|
| **Entity Name** | SURGALIGN SPINE TECHNOLOGIES, INC. | | |
| **File Number** | 72537157 | **Status** | BANKRUPTCY |
| **Entity Type** | CORPORATION | **Type of Corp** | FOREIGN BCA |
| **Qualification Date (Foreign)** | 09-24-2020 | **State** | DELAWARE |
| **Duration Date** | PERPETUAL | | |
| **Annual Report Filing Date** | 11-09-2022 | **Annual Report Year** | 2022 |
| **Agent Information** | UNITED CORPORATE SERVICES, INC 901 S. 2ND STREET STE 201 SPRINGFIELD ,IL 62704 | **Agent Change Date** | 09-24-2020 |

**Services and More Information**
Choose a tab below to view services available to this business and more information about this business.

Email to David Lyle, CFO

November 4, 2022

RE:  SEC settlement details outlined in August 3, 2022
PR/requesting link and/or PR copy for review


(No reply from CFO regarding pointed questions about SEC settlement, yet IR replied asking me to direct all inquiries to him moving forward)

**Re: [External]:**

Ryan Messner
Fri 11/4/2022 11:52 AM
To:Glenn Wiener <gwiener@surgalign.com>

Thank you for the reply, Glenn.

I have seen your contact information in press releases, but have never seen a PR announcing you as the IR contact...... You probably don't want to publish that right now, however, as you will be bombarded with emails I'm certain.  A press release announcing you as the IR person, along with a PR regarding the Virginia HOLO site would have been nice, to be honest.  Not sure why the company chose not to release either of those PR's as the company shouldn't have limitations in regards to staff appointments, nor should they have limitations regarding completed HOLO sites, like the Virginia site for example.

Thanks for your concern.  Look forward to speaking with you next week at some point.

Have a nice weekend.
Ryan

**Ryan Messner**
Paralegal | Notary Public State at Large KY | Certified Remote Online Notary (RON)
859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us



*This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.*

**From:** Glenn Wiener <gwiener@surgalign.com>
**Sent:** Friday, November 4, 2022 11:46 AM
**To:** ryanmessner@hotmail.com <ryanmessner@hotmail.com>
**Cc:** Glenn Wiener <gwiener@surgalign.com>
**Subject:** Fwd: [External]:

Ryan,

Dave forwarded me your emails from this week. I fully understand your frustrations and you have every right to voice opinions and concerns...you do. Dave, along with Terry and the team, is knee-deep in trying to secure financing and other matters so please direct questions to me moving forward.

To note, we have issued releases as milestones occur and as we are able to. There are restrictions when working with 3rd-parties and there are plans in place. We have been more active in communicating on our quarterly calls and as you've stated in several emails to Dave, the details were appreciated. We

have been implemented a more comprehensive plan over the past 4-6 months - IR, PR, Social and Marketing, but there are limitations in what we can do and when.

If you have questions, please send them over and I'll address what I can. Maybe next week, you and I can jump on a call as well.

All the best,

Glenn Wiener
Investor Relations
Surgalign Holdings, Inc.
Email: gwiener@surgalign.com

Begin forwarded message:

**From:** David Lyle <dlyle@surgalign.com>
**Subject: FW: [External]:**
**Date:** November 4, 2022 at 11:37:05 AM EDT
**To:** Glenn Wiener <gwiener@gwcco.com>

**From:** Ryan Messner <ryanmessner@hotmail.com>
**Sent:** Friday, November 4, 2022 8:17 AM
**To:** David Lyle <dlyle@surgalign.com>
**Subject:** [External]:

another great day it appears! LOL

would have been nice for Terry to put out a PR about the Virginia site for HOLO, or something positive to keep us above $1 per share! delisting next, followed by another reverse split to totally screw all retail investors with absolutely no hope of recovering their losses.

i guess he doesn't care, since all of his shares were granted at no cost to him, while i have lost $120k on this failed company!

NOT HAPPY one bit! people forget that we may not have to answer to anyone on earth, but one day, we all get to answer for how we chose to live our lives! i'm sure Terry thinks he is above God also, let me guess..... big surprise coming for him, since he doesn't care about the investors of this company one bit. at least he keeps repeating that he seems to care about patient outcomes, which is nice i suppose. but, that doesn't help the shareholders that are down 95% in 12 months!

i have nothing constructive to say any longer, as we will now spend the remaining money on legal fees to fight the FRAUD cases.... my word, we can't even purchase the HOLO platform without alleged fraud being involved.....seriously?! i guess that's why the legal counsel decided to leave !

we cannot find any previous PR's regarding the SEC settlement/investigation, so I have to assume that all of my research on this company over the past 2 years was based on FAKE financials submitted by PREVIOUS management (which made me believe SRGA had 100% higher revenues pre-covid, that what they actually were), yet Terry never once mentioned the FAKE financial reporting until the settlement PR came out recently..... don't you think that would be something important that potential investors would like to know, or need to know, before dropping money into the alleged FRAUDULENT HOLO purchase?! If i have missed that PR, please send me a link to it so we can review in more detail.

Terry might think he pulled one over on all of us retail investors, but he gets to answer for treating us like dirt and not caring one bit about the shareholders! I have been patient, and given him plenty of time, yet he can't get the job done.

You have been nothing but kind Dave, but this is totally unaccceptable at this point.  I hope you understand my position.

Ryan

**Ryan Messner**
Paralegal | Notary Public State at Large KY | Certified Remote Online Notary (RON)
859.559.7985 | ryanmessner@hotmail.com | www.ron-ky.us



*This message may contain confidential or proprietary information intended only for the use of the addressee(s) named above or may contain information that is legally privileged. If you are not the intended addressee, or the person responsible for delivering it to the intended addressee, you are hereby notified that reading, disseminating, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and delete the original message and any copies immediately thereafter.*

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this

# Fizan v. Surgalign Holdings, Inc.

*Defendant Krzysztof Siemionow*

*Defendant Cristian Luciano*

*Defendant Pawel Lewicki (collectively with Dr. Siemionow and Mr. Luciano, the "Individual Defendants" and with all others, "Defendants")*

C. A. N22C-03-110 PRW CCLD

02-07-2023

GPV I FIZAN and StartVenture@Poland sp. z o.o. ASI SKA v. Surgalign Holdings, Inc., et al.

Sean J. Bellew, Esquire BELLEW LLC Ralph N. Sianni, Esquire ANDERSON SLEATER SIANNI LLC Kenneth J. Nachbar, Esquire MORRIS, NICHOLS, ARSHT & TUNNELL Robert F. Ruyak, Esquire LARSON LLP

PAUL R. WALLACE JUDGE

Date Submitted: January 30, 2023

Sean J. Bellew, Esquire

BELLEW LLC

Ralph N. Sianni, Esquire

ANDERSON SLEATER SIANNI LLC

Kenneth J. Nachbar, Esquire

MORRIS, NICHOLS, ARSHT & TUNNELL

Robert F. Ruyak, Esquire

LARSON LLP

PAUL R. WALLACE JUDGE

Dear Counsel:

This Letter Order resolves Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and, in the alternative, *forum non conveniens* (the "Motion"). For the reasons explained below, the Motion is **GRANTED**.

## I. BACKGROUND

### A. The Parties

Plaintiff GPV I FIZAN is a venture capital firm registered in Poland with its principal place of business in Warsaw, Poland. GPV invests in startups and technology companies. Its largest shareholder is PFR Ventures, an agency of the Government of Poland. Plaintiff

StartVenture@Poland sp. z o.o. ASI SKA (collectively with GPV, "Plaintiffs") is a company registered in Poland with its principal place of business in Warsaw, Poland.

Defendant Surgalign Holdings, Inc. is a medical technology company focused on spinal technologies and is a Delaware corporation with its principal place of business in Deerfield, Illinois. Defendant Roboticine, Inc. is a holding company for Surgalign stock and is a Delaware corporation with its principal place of business in Tulsa, Oklahoma. Defendant SSAR Investments LLC is a Delaware LLC with its principal place of business in Tulsa, Oklahoma. SSAR is a holding company and "owns the majority of" Roboticine shares. Defendant Neva LLC is a Delaware LLC with its principal place of business in Tulsa, Oklahoma. Neva is a holding company and "owns 100% of SSAR."

Defendant Krzysztof Siemionow is a Polish citizen who resides in Chicago, Illinois. Dr. Siemionow is the Chief Medical Officer of Surgalign, the Chief Executive Officer of Roboticine, and a former member of Holo Surgical, S.A.'s ("Holo SA" and defined further below) management board. Defendant Cristian Luciano is an Argentinian citizen residing in Chicago, Illinois. Mr. Luciano is the Vice President of Research and Development and Digital Surgery for Surgalign.He also is a former member of Holo SA's management board. Defendant Pawel Lewicki (collectively with Dr. Siemionow and Mr. Luciano, the "Individual Defendants" and with all others, "Defendants") is a Polish citizen residing in Tulsa, Oklahoma. Mr. Lewicki is an independent director of Surgalign, the President and a director of Roboticine, a member of Holo SA's supervisory board, and owner of "100% of Neva."

## B. The Alleged Wrongful Scheme

In August 2015, Plaintiffs and Defendant Dr. Siemionow and Defendant Mr. Luciano entered into an investment agreement to establish Holo SA. Holo SA is a Polish company that owned intellectual property, including a United States patent that relates to a surgical navigation system and provides a method for augmented reality imaging during surgeries. Plaintiffs' initial investment was $850,000 for a 31.14% interest in Holo SA. In March 2017, Holo SA conducted two capital raises, whereby Defendant Mr. Lewicki through SSAR invested $2 million in Holo SA (the "2017 Investment Agreement"). As a result, Plaintiffs then collectively owned 29.26% of Holo SA.

In 2016, in expectation of a future sale of Holo SA to a United States buyer, Holo SA established Holo Surgical, Inc. ("Holo Inc."), "a wholly-owned Delaware subsidiary to hold all of Holo SA's intellectual property rights and assets."Defendant Dr. Siemionow served as President of Holo Inc. On May 9, 2017, Holo SA transferred all of its intellectual property rights and assets to Holo Inc.

In November and December 2017, Plaintiffs and the Individual Defendants discussed amendments to the 2017 Investment Agreement to permit Holo SA to have more control over the intellectual property assets then owned by Holo Inc. Those amendments never were executed.

On April 5, 2019, one or more Individual Defendants incorporated Roboticine in Delaware. From August 2019 to January 2020, the Individual Defendants recurrently warned

Plaintiffs that Holo SA's financial situation was rapidly deteriorating, but the Individual Defendants didn't provide the financials to Plaintiffs to support those warnings. The Individual Defendants represented they engaged in efforts to secure an investor or buyer to save Holo SA but couldn't find one.

On January 8, 2020, Plaintiffs learned the Individual Defendants issued new shares of Holo Inc. and sold those shares to Roboticine. Plaintiffs allege this transaction occurred at some unknown time before January 8, 2020. From this transaction, Roboticine owned a 90.5% interest in Holo Inc. Roboticine's investment in Holo Inc. reduced Holo SA's interest in Holo Inc. from 100% to 9.5% and thereby reduced Plaintiffs' interest in the intellectual property held by Holo Inc. from 29.26% to 2.8%.

After Plaintiffs discovered the Roboticine transaction, they became "increasingly concerned about the value of their investments" and "hired legal counsel to negotiate a possible sale of their minority rights." From March 2020 through June 2020, Plaintiffs and the Individual Defendants negotiated the sale of Plaintiffs' Holo SA shares. On June 26, 2020, Plaintiffs sold their remaining 29.26% interest in Holo SA to Roboticine for $1.8 million (the "Share Purchase Agreement").

After Roboticine acquired Plaintiffs' shares in Holo SA, the Individual Defendants reorganized the relationships between Holo SA, Holo Inc., and Roboticine. The result was: (1) Roboticine acquired Holo SA's remaining shares in Holo Inc., and (2) Defendants Dr. Siemionow and Mr. Luciano became shareholders of Roboticine. As a result, the Individual Defendants collectively owned 100% of Roboticine, which owned 100% of Holo Inc., which held all of Holo SA's intellectual property.

On September 29, 2020, the Individual Defendants, through Roboticine, sold all of Roboticine's interest in Holo Inc. to Surgalign for approximately $125 million (the "Stock Purchase Agreement"). The itemized purchase price consisted of: (1) a cash payment of $30 million; (2) 6,250,000 shares of Surgalign's stock with a total value of approximately $12 million; and (3) potential earn-out payments totaling $83 million. The transaction closed on October 23, 2020. Surgalign appointed Defendant Dr. Siemionow as Chief Medical Officer, Defendant Mr. Lewicki as a non-executive director, and Defendant Mr. Luciano as Vice President of Research and Development and Digital Surgery. Plaintiffs believe Surgalign colluded with other Defendants to keep Plaintiffs in the dark with respect to this transaction.

## C. Relevant Contractual Language

The Share Purchase Agreement is relevant to the current Motion. So an examination of the contractual language is necessary. Section 2.12.1(i), titled "Waiver for Claims by the Parties," states:

The Sellers [*i.e.*, Plaintiffs] hereby declare that, under the condition subsequent triggered by the Buyer's [*i.e.*, Roboticine] failure to pay the entire Sale Price within the time limits specified . . . [the Sellers]: (i) unconditionally and fully waive (release from debt) and will not pursue any claims from [Roboticine], [Individual Defendants], [Holo SA], their affiliates, employees,

advisers or members of corporate bodies of [Roboticine] that exist on the date of concluding this Agreement or that may arise in the future, whether of the nature of contractual, in particular those resulting from the Investment Agreement of August 28, 2015, the Investment Agreement of March 14, 2017, the Article of Association in the wording in force on a given date, as well as noncontractual, with the exception of claims directly arising from this

Agreement.

There is no dispute the sale price was paid to Plaintiffs.

Additionally, the "Waiver of Claims by the Parties" section states that the Plaintiffs:

[U]ndertake to refrain from any action in fact or in law that could lead to damage to the property of [Roboticine], [Individual Defendants], [Holo SA], their affiliates, employees, advisers or members of [Roboticine's] corporate bodies, and not to initiate any proceedings before courts or authorities against or with participation of [Roboticine], [Individual Defendants], [Holo SA], their related entities, employees, advisers or members of [Roboticine's] corporate bodies, the result of which could have a direct and significant negative effect on the other Parties or their related entities . . ., with the exception of pursuing claims directly arising from this Agreement.

The Share Purchase Agreement contains a "Governing Law and Jurisdiction" section, which provides:

This Agreement is subject to the provisions of Polish law and should be interpreted in accordance with them. Any disputes arising out of or in connection with this Agreement shall be finally settled by the Arbitral Tribunal operating at the Lewiatan Court of Arbitration in Warsaw in accordance with the provisions of the Rules of this Court, in force on the date of initiation of the proceedings.

**D. Procedural History**

In March 2022, Plaintiffs filed their original complaint in this action. Defendants filed their first Motion to Dismiss shortly thereafter. In June 2022, Plaintiffs amended their complaint, mooting Defendants' first motion to dismiss. The Amended Complaint asserts five causes of action: (1) common law fraud against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for the allegedly false statements made to "deceive" Plaintiffs with respect to the sale of Holo Inc. stock to Roboticine, Roboticine's purchase of Plaintiffs' interests in Holo SA, and the closing of the sale of Holo SA to Surgalign; (2) constructive fraud against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for, *inter alia*, the statements made to allegedly cause Plaintiffs to sell their Holo SA shares to Roboticine; (3) fraudulent inducement against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for the allegedly material misrepresentations of fact as it relates to the transactions at issue; (4) conspiracy to defraud against all Defendants for allegedly engaging in a scheme to "defraud Plaintiffs of the true value of their investments"; and (5) unjust enrichment, unlawful taking, and conversion.

Defendants filed their current motion, seeking to dismiss the Amended Complaint under Civil Rules 12(b)(2), 12(b)(3), 12(b)(6), and, in the alternative, *forum non conveniens*. The Court

heard argument on the Motion and took it under advisement. This Letter Order disposes of the Motion and the case.

## II. APPLICABLE LEGAL STANDARDS

### A. Dismissal for Improper Venue

Delaware Superior Court Civil Rule 12(b)(3) governs a motion to dismiss for improper venue. The Court "must assume as true all the facts pled in the complaint and view those facts and all reasonable inferences drawn from them in the light most favorable to the plaintiff." The Court "is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset." A motion to dismiss may be granted "before the commencement of discovery on the basis of affidavits and documentary evidence if the plaintiff cannot make out a *prima facie* case in support of its position."

Additionally, when the Court considers a motion to dismiss for improper venue, it must "give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.""If a forum selection clause validly limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for the plaintiff to sue."

## III. PARTIES' CONTENTIONS

### A. Defendants' Contentions

Defendants contend the Amended Complaint should be dismissed against the Individual Defendants for lack of personal jurisdiction. Namely, Defendants argue the Court does not have personal jurisdiction over the Individual Defendants under 10 Del. C. § 3114-Delaware's Corporate Director and Officer Consent Statute- because the Individual Defendants aren't "necessary or proper parties" nor does the Amended Complaint allege any "violation of a duty in such capacity." Defendants also say the Court does not have personal jurisdiction over the Individual Defendants under 10 Del. C. § 3104-Delaware's Long-Arm Statute.

Next, Defendants insist that dismissal under 12(b)(3) is appropriate because Plaintiffs, the Individual Defendants, Roboticine, and SSAR are subject to exclusive jurisdiction in Poland. Finally, Defendants suggest dismissal under 12(b)(6) is appropriate because Plaintiffs fail to sufficiently plead a claim as to any count.Defendants contend, in the alternative, the Amended Complaint should be dismissed for *forum non conveniens*.

### B. Plaintiffs' Contentions

Plaintiffs maintain they have sufficiently alleged personal jurisdiction over all Defendants to satisfy Rule 12(b)(2). Namely, they argue personal jurisdiction exists for Defendants Mr. Lewicki and Dr. Siemionow under Delaware's Corporate Director and Officer Consent Statute because they are officers and directors of Roboticine and are "necessary or proper" to this action. Plaintiffs further say personal jurisdiction exists for Defendant Mr. Lewicki under the

Long-Arm Statute because he caused Roboticine to be incorporated in Delaware, and personal jurisdiction exists over all Individual Defendants under the conspiracy theory doctrine of personal jurisdiction.

Next, Plaintiffs insist that neither Rule 12(b)(3) nor *forum non conveniens* require dismissal because the Share Purchase Agreement's arbitration clause does not mandate dismissal under Rule 12(b)(3) and Defendants cannot demonstrate the "overwhelming hardship" necessary to succeed on *forum non conveniens*. Finally, Plaintiffs assert that the Amended Complaint adequately pleads a claim for each of their five counts.

## IV. DISCUSSION

Because dismissal under Rule 12(b)(3) is appropriate here, the Court need address only the improper venue arguments.

## A. IMPROPER VENUE

To reiterate, under Rule 12(b)(3), on a motion to dismiss for improper venue, "the Court is not shackled to the non-moving party's complaint and is permitted to consider extrinsic evidence." And again, in the 12(b)(3) context, "the Court should 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" Too, "[i]f a forum selection clause validly limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for plaintiff to sue." The Court will "consider if deference to the forum selection should not be afforded only: (1) if enforcement would be unreasonable and unjust under the circumstances; or (2) the forum selection clause was procured by fraudulent inducement."

The Share Purchase Agreement contains a "Governing Law and Jurisdiction" provision requiring that "[a]ny disputes arising out of or in connection with this Agreement shall be finally settled by the Arbitral Tribunal operating at the Lewiatan Court of Arbitration in Warsaw." Plaintiffs, the Individual Defendants, Roboticine, and SSAR are all parties to the Share Purchase Agreement. Plaintiffs' fraud claims arise out of or are in connection with the Share Purchase Agreement. The fraud claims (Counts I-IV) all center around Defendants' alleged attempts to conceal and withhold information from Plaintiffs to divest Plaintiffs of the "true value of their interests as shareholders in Holo SA." The Share Purchase Agreement governed Plaintiffs' sale of their interest in Holo SA to Roboticine.The fraud claims, thus, arise out of or in connection with the Share Purchase Agreement. Although Plaintiffs did not plead a breach-of-contract claim under the Share Purchase Agreement, "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship." Thus, Poland is the presumptive forum for these claims unless one of the two before-mentioned exceptions is satisfied.

"An agreement is only unreasonable when its enforcement would seriously impair [p]laintiff's ability to pursue its cause of action. Mere inconvenience or additional expense is not the test of unreasonableness." Plaintiffs have not demonstrated that the Share Purchase Agreement's forum selection clause would impair their ability to pursue their causes of action. They suggest only

that the Share Purchase Agreement is governed by Polish law and if fraudulent inducement is found, the contract is invalid under Polish law. Plaintiffs therefore have not argued that enforcement of the forum selection clause would be unreasonable or unjust.

The second exception-whether the forum selection clause was procured by fraudulent inducement-also warrants dismissal. Plaintiffs argue the execution of the Share Purchase Agreement was procured by fraudulent inducement, but not that the *forum selection clause* was.

This harkens to *Airbase Carpet Mart, Inc. v. AYA Associates, Inc.*, where the plaintiff alleged that fraudulent advertising may have induced it into entering the contract at issue. This Court held that the *Airbase Carpet* forum selection clause was valid because the plaintiff did not allege "in the Complaint, nor argue against dismissal, that the *forum selection clause* was procured through fraud or fraudulent inducement." Same here. Plaintiffs' argument is that they were fraudulently induced into executing the Share Purchase Agreement, not that the forum selection clause itself was procured or added through fraud or fraudulent inducement.

Plaintiffs go on to insist that the fraud claims do not arise out of the Share Purchase Agreement and that under Delaware law parties may bring an independent fraud claim where the fraudulent conduct occurs prior to the execution of the contract to induce Plaintiffs' signature. They look to *Levy Family Investors, LLC v. Oars + Alps LLC* to no avail. *Oars + Alps* concerned fraud and contract claims as it relates to anti-bootstrapping rules, not deference (or lack thereof) to a forum selection clause.

Finally, Plaintiffs' Count V claim (unjust enrichment, unlawful taking, and conversion-which are pleaded all in one count) also arises out of and in connection with the Share Purchase Agreement. Plaintiffs contend "Defendants unjustly enriched themselves by fraudulently inducing Plaintiffs to transfer all of their ownership interests in Holo SA to Defendant Roboticine without just and adequate compensation." This conduct arises out of or in connection with the Share Purchase Agreement because the conduct complained of is governed by the Share Purchase Agreement, that is, Plaintiffs' sale of their Holo SA interests to Roboticine. They next charge that "[t]he transfer of Plaintiffs' interests to Defendant Robocitine . . . was an unlawful taking and conversion." These sub-parts of Count V, too, arise out of the transaction memorialized by the Share Purchase Agreement.

The Court therefore finds that the forum selection clause controls and limits Plaintiffs' contest to Poland.

## V. CONCLUSION

The Share Purchase Agreement's forum selection clause governs all claims in this action because all claims arise out of or in connection with the Share Purchase Agreement. That forum selection clause is valid. Accordingly, the claims belong in Poland as required by its express and binding terms.

Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

*Fizan v. Surgalign Holdings, Inc.*, C. A. N22C-03-110 PRW CCLD, (Del. Super. Ct. Feb. 7, 2023)

CFO absence timeframe

## Surgalign Holdings Announces Management Changes

SEPTEMBER 23, 2021 4:04PM EDT

# 143 days without CFO

## Surgalign Announces Appointment of David Lyle as Chief Financial Officer

MARCH 07, 2022 9:00AM EST

# Closing Arguments

I have previously communicated my adversary proceeding complaint intentions to the Court by and through my original PLEADING filed on July 6, 2023 and by my MODIFICATION & CLARIFICATION OF PLEADING filed on July 31, 2023. Furthermore, I have pre-notified debtor's counsel of my complaints, and intentions as it relates to said adversary proceeding by and through email on July 18, 2023. As stated in my last email to debtor's counsel on August 2, 2023, "I am attempting to work with your counsel to resolve my claim WITHOUT pursuing further action, but again, the lack of communication and clarity from the company is alarming." As of August 9, 2023, I have not received an approval, or denial, from the Court in regards to the aforementioned PLEADING as it is past the 30-day review period since filing, nor have I received a response from debtor's counsel regarding any resolution WITHOUT pursuing further action. Considering both proactive good faith attempts to resolve my complaints WITHOUT pursuing further action, I am being forced to file the attached Adversary Proceeding, to ensure it is received and filed BEFORE the upcoming Bar Date of August 16, 2023. All previous communication was intended to provide transparency, and to communicate my intentions in regards to the relationship of all parties in this process.

Communication is the baseline to all relationships, and in business relationships, it is critical to maintain open channels of communication for not only trust, but also for the relationship to develop. This includes emails and resources, as well as verbal communication. The way we communicate with others is a primary way we build trust. Trust is a powerful force that builds loyalty, increases credibility and supports effective communications. It gives you the benefit of the doubt in situations where you want to be heard, understood, and believed. It is extremely difficult to communicate anything when there is a lack of transparency and trust.

The communication, or lack of, between management of the debtor and the shareholders has been abysmal, at best, since becoming a shareholder in 2021. I personally addressed this fact numerous times with Investor Relations since 2021, and at one point had very good communication channels with David Lyle, CFO, after he joined the company in March of 2022. Mr. Lyle thanked me for being a shareholder, and assured me that he was committed to fixing the communication issues that existed, for which I did see a slight improvement after that commitment. I don't know if my built-up frustration, mental anguish, and sarcasm was felt through the tone of my email communication with Mr. Lyle on November 4, 2022, which included my request for a copy of a press release that "preceded" the SEC settlement press release on August 3, 2022, thinking that I may have overlooked that in my research of the company in 2020, but it was curious to receive the following email reply from Glenn Wiener on November 4, 2022, for which I have included an excerpt below:

Dave forwarded me your emails from this week. I fully understand your frustrations and you have every right to voice opinions and concerns…you do. Dave, along with Terry and the team, is knee-deep in trying to secure financing and other matters so please direct questions to me moving forward.

To note, we have issued releases as milestones occur and as we are able to. There are restrictions when working with 3rd-parties and there are plans in place. We have been more active in communicating on our quarterly calls and as you've stated in several emails to Dave, the details were appreciated. We have been implemented a more comprehensive plan over the past 4-6 months - IR, PR, Social and Marketing, but there are limitations in what we can do and when.

In the email reply above, there was absolutely no reference made to my request for the "preceding" press release, which would have warned potential investors about the "pending" SEC investigation back in 2020, and the 'pull-forward' scheme used to falsify financials during the 2015-2019 timespan. In fact, it is curious that I was advised to "please direct questions to me moving forward," taking the CFO out of the conversation. Communicating in some way, whether accepting or denying the fact that the company failed to address the initiation of the SEC investigation in 2020, would have been a good gesture, yet neither Mr. Lyle, nor Mr. Wiener, chose to respond.

During the 2015-2019 timespan, fraud has already been proven as a result of the aforementioned SEC investigation. In February 2023, Surgalign Holdings, Inc. was named as a defendant in Fizan v. Surgalign Holdings, Inc., which included the following defendants, later employed by Surgalign Holdings, Inc.:

*Defendant Krzysztof Siemionow is the Chief Medical Officer of Surgalign, the Chief Executive Officer of Roboticine, and a former member of Holo Surgical, S.A.'s ("Holo SA" and defined further below) management board.*

*Defendant Cristian Luciano is the Vice President of Research and Development and Digital Surgery for Surgalign. He also is a former member of Holo SA's management board.*

*Defendant Pawel Lewicki (collectively with Dr. Siemionow and Mr. Luciano, the "Individual Defendants" and with all others, "Defendants") is an independent director of Surgalign, the President and a director of Roboticine, a member of Holo SA's supervisory board, and owner of 100% of Neva.*

On November 23, 2020, Surgalign Holdings, Inc. appointed Paul Lewicki to the Board of Directors, after the acquisition of Holo Surgical which he co-founded, along with co-founding Interneural Networks Inc. Furthermore, the Board determined not to renominate Dr. Lewicki due to, among other things, the Board's belief that given Dr. Lewicki's personal financial and other interests in the transactions involving Holo Surgical Inc. and Inteneural Networks Inc., and other disagreements between Dr. Lewicki and the Company, it was in the best interest of the Company and its shareholders that Dr. Lewicki not continue to serve as a director of the Company. Dr. Lewicki has informed the Board that he disagrees with the Company's determination not to renominate him for election to the Board, as stated in SCHEDULE 14A.

The acquisition of Holo Surgical is detailed below:

On September 29, 2020, the Individual Defendants, through Roboticine, sold all of Roboticine's interest in Holo Inc. to Surgalign for approximately $125 million (the "Stock Purchase Agreement"). The itemized purchase price consisted of: (1) a cash payment of $30 million; (2) 6,250,000 shares of Surgalign's stock with a total value of approximately $12 million; and (3) potential earn-out payments totaling $83 million. The transaction closed on October 23, 2020. Surgalign appointed Defendant Dr. Siemionow as Chief Medical Officer, Defendant Mr. Lewicki as a non-executive director, and Defendant Mr. Luciano as Vice President of Research and Development and Digital Surgery. Plaintiffs believe Surgalign colluded with other

Defendants to keep Plaintiffs in the dark with respect to this transaction.  Fizan v. Surgalign Holdings, Inc., C. A. N22C-03-110 PRW CCLD, 6-7 (Del. Super. Ct. Feb. 7, 2023)

It is curious that Surgalign Holdings, Inc. is listed as "defendant" in the Fizan v. Surgalign Holdings, Inc. case, assuming that is as a direct result of their association of the alleged actions of the personnel they hired above, after the 10/26/18 incorporation date of Surgalign Holdings, Inc.?

Similar to the RTI accounting fraud SEC investigation, it is my belief that Surgalign's management team knew unequivocally about the alleged wrongful scheme outlined in the Fizan v. Surgalign Holdings, Inc. case, and not only chose to move forward with purchasing Holo Surgical from the defendants in that case, but also chose to hire all three defendants, knowing full well that the Plaintiffs in that case believed Surgalign colluded with other Defendants to keep Plaintiffs in the dark with respect to the transaction.

The distrust associated with previous management in regards to accounting fraud, in addition to the alleged wrongdoing by the co-founders of Holo Surgical who were later employed by Surgalign, combined with the lack of communication that current management has proven by not disclosing crucial pieces of information to potential investors like myself, by intentionally not issuing critical press releases, has apparently broken the trust of the securities markets, which until now, I never understood.  All of these facts combined are exactly why the securities markets did not react in a positive way when FDA 510(k) approval was issued for the Holo Portal System on January 18, 2022.

To complicate matters, On September 23, 2021, Surgalign Holdings Announces Management Changes as follows:

*DEERFIELD, Ill., Sept. 23, 2021 (GLOBE NEWSWIRE) -- Surgalign Holdings, Inc., (NASDAQ: SRGA) a global medical technology company focused on elevating the standard of care by driving the evolution of digital surgery, today announced that the Company's Chief Financial and Operating Officer, Jonathon M. Singer, has resigned from the Company, effective October 15, 2021, to pursue another opportunity. Mr. Singer's resignation did not result from any disagreement with the Company. The Company is conducting a search for Mr. Singer's successor.*

On March 7, 2022, Surgalign Announces Appointment of David Lyle as Chief Financial Officer.

For 143 days, the company did not have a CFO on staff.  Without having a CFO on staff, the CEO makes major financial decisions and is responsible for reporting, growth, and business strategy.

The CEO made numerous questionable decisions and actions during this 143-day period, including but not limited to the following:

Inducement Grants to potential new employees Under Nasdaq Listing Rule 5635(C)(4) were invoked 6 times, in an effort to attract and retain employees, again knowing full well that the company was facing pending lawsuits in regards to alleged schemes by their three employees

directly involved with the Holo Portal platform, and I highly doubt those pending lawsuits were disclosed to the potential new employees, thus jeopardizing their well-being and futures as a result of alleged actions that began in 2015.

On February 10, 2022, the CEO announced the pricing for a $20 million public offering, at a 40% discount to current market value. Therefore, the company's stock price immediately fell 40%, and never recovered. The reasoning for this public offering was never provided, and only added to the distrust level of the current management team.

These actions are a dereliction of duty, and a lack of financial integrity, as the CEO did not act in a clean, transparent, and accountable way during the 143-day period of time that the company was allegedly searching for a replacement CFO. The CEO and Board of Directors approved these financial decisions, without hesitation, nor concern for the well-being of the potential new employees, nor for the financial well-being of the shareholders of the company.

The questionable business transactions continued, after parting ways with Pawel Lewicki from the Board of Directors, again with no detailed reasoning, nor any communication in response to my email inquiry as to why the co-founder of Holo Portal was fired from the Board. It would have been nice to disclose what the true disagreements were between Pawel Lewicki, and the company.

On January 5, 2022, Surgalign Holdings invested $21 million into Interneural Networks Inc., which was co-founded by said Pawel Lewicki. This transaction speaks for itself.

Surgalign Holdings paid $125 million for Holo Portal, in addition to the $21 million digital footprint expansion in Interneural Networks, which are both considered digital assets.

Said $146 million worth of digital assets were sold at bankruptcy auction on August 8, 2023 for $1.5 million. This transaction also speaks for itself.

I am seeking monetary damages for failure to disclose information, and for misrepresenting pertinent information investors use to make decisions. The false representation, false pretenses, and history of fraud are evident in this matter. I am including Negligent Infliction of Emotional Distress, as this matter has caused unrepairable emotional damage, as well as financial damage affecting the remainder of my life in a negative way.